# LOCKHART, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION v. FRETWELL

No. 91–1393.   Argued November 3, 1992—Decided January 25, 1993

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, O'CONNOR, SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. O'CONNOR, J., *post*, p. 373, and THOMAS, J., *post*, p. 375, filed concurring opinions. STEVENS, J., filed a dissenting opinion, in which BLACKMUN, J., joined, *post*, p. 376.

*Winston Bryant,* Attorney General of Arkansas, argued the cause for petitioner. With him on the briefs were *Clint Miller,* Senior Assistant Attorney General, and *J. Brent Standridge,* Assistant Attorney General.

*Amy L. Wax* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Richard A. Friedman.*

*Ricky R. Medlock,* by appointment of the Court, 504 U. S. 984, argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of California et al. by *Daniel E. Lungren,* Attorney General of California, *George Williamson,* Chief Assistant Attorney General, *Ward A. Campbell,* Deputy Attorney General, and *Mark L. Krotoski,* Special Assistant Attorney General, *James H. Evans,* Attorney General of Alabama, *Charles E. Cole,* Attorney General of Alaska, *Grant Woods,* Attorney General of Arizona, *Gale A. Norton,* Attorney General of Colorado, *Richard N. Palmer,* Chief

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In this case we decide whether counsel's failure to make an objection in a state criminal sentencing proceeding—an objection that would have been supported by a decision which subsequently was overruled—constitutes "prejudice" within the meaning of our decision in *Strickland* v. *Washington*, 466 U. S. 668 (1984). Because the result of the sentencing proceeding in this case was rendered neither unreliable nor fundamentally unfair as a result of counsel's failure to make the objection, we answer the question in the negative. To hold otherwise would grant criminal defendants a windfall to which they are not entitled.

In August 1985, an Arkansas jury convicted respondent Bobby Ray Fretwell of capital felony murder. During the penalty phase, the State argued that the evidence presented during the guilt phase established two aggravating factors: (1) the murder was committed for pecuniary gain, and (2) the murder was committed to facilitate respondent's escape. Finding the existence of the first of these factors, and no mitigating factors, the jury sentenced respondent to death.

State's Attorney of Connecticut, *Charles M. Oberly III*, Attorney General of Delaware, *Robert A. Butterworth*, Attorney General of Florida, *Larry EchoHawk*, Attorney General of Idaho, *Chris Gorman*, Attorney General of Kentucky, *Marc Racicot*, Attorney General of Montana, *Don Stenberg*, Attorney General of Nebraska, *Frankie Sue Del Papa*, Attorney General of Nevada, *Robert J. Del Tufo*, Attorney General of New Jersey, *Lacy H. Thornburg*, Attorney General of North Carolina, *Charles S. Crookham*, Attorney General of Oregon, *Ernest D. Preate, Jr.*, Attorney General of Pennsylvania, *T. Travis Medlock*, Attorney General of South Carolina, *Mark Barnett*, Attorney General of South Dakota, *Jeffrey L. Amestoy*, Attorney General of Vermont, *Kenneth O. Eikenberry*, Attorney General of Washington, and *Joseph B. Meyer*, Attorney General of Wyoming; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger*.

*Michael Mello* and *Martin McClain* filed a brief for the Office of the Capital Collateral Representative of Florida et al. as *amicus curiae*.

On direct appeal, respondent argued, *inter alia*, that his sentence should be reversed in light of *Collins* v. *Lockhart*, 754 F. 2d 258 (CA8), cert. denied, 474 U. S. 1013 (1985). In that case the Court of Appeals for the Eighth Circuit held that a death sentence is unconstitutional if it is based on an aggravating factor that duplicates an element of the underlying felony, because such a factor does not genuinely narrow the class of persons eligible for the death penalty. Accordingly, respondent argued that his death sentence was unconstitutional because pecuniary gain is an element of the underlying felony in his capital felony-murder conviction—murder in the course of a robbery. The Arkansas Supreme Court declined to consider whether to follow *Collins* because respondent failed to object to the use of the pecuniary gain aggravator during the sentencing proceeding. Rejecting the remainder of respondent's claims, the Arkansas Supreme Court affirmed both the conviction and the death sentence. *Fretwell* v. *State*, 289 Ark. 91, 708 S. W. 2d 630 (1986). Respondent then filed a state habeas corpus challenge, arguing that trial counsel was ineffective for failing to raise the *Collins* objection. The Arkansas Supreme Court rejected the claim because the Arkansas courts had not passed on the *Collins* question at the time of respondent's trial. *Fretwell* v. *State*, 292 Ark. 96, 97, 728 S. W. 2d 180, 181 (1987).

Respondent filed a petition seeking federal habeas corpus relief under 28 U. S. C. § 2254 in the United States District Court for the Eastern District of Arkansas. Among other things, he argued that his trial counsel did not perform effectively because he failed to raise the *Collins* objection. The District Court held that counsel "had a duty to be aware of all law relevant to death penalty cases," and that failure to make the *Collins* objection amounted to prejudice under *Strickland* v. *Washington, supra.* 739 F. Supp. 1334, 1337 (ED Ark. 1990). The District Court granted habeas relief and conditionally vacated respondent's death sentence. *Id.*, at 1338.

The Court of Appeals affirmed by a divided vote, 946 F. 2d 571 (CA8 1991), even though it had two years earlier overruled its decision in *Collins* in light of our decision in *Lowenfield* v. *Phelps*, 484 U. S. 231 (1988). See *Perry* v. *Lockhart*, 871 F. 2d 1384 (CA8), cert. denied, 493 U. S. 959 (1989). The majority believed that the Arkansas trial court was bound under the Supremacy Clause to obey the Eighth Circuit's interpretation of the Federal Constitution. Based on this belief, it reasoned that had counsel made the objection, the trial court would have sustained the objection and the jury would not have sentenced respondent to death. The court remanded, ordering the District Court to sentence respondent to life imprisonment without the possibility of parole. It held that since respondent was entitled to the benefit of *Collins* at the time of his original sentencing proceeding, it would only "perpetuate the prejudice caused by the original sixth amendment violation" to resentence him under current law. 946 F. 2d, at 578.

The dissenting judge argued that *Strickland* prejudice involves more than a determination that the outcome would have been different—it also involves the concepts of reliability and fairness. 946 F. 2d, at 579 ("By focusing only on the probable effect of counsel's error at the time of Fretwell's sentencing, the majority misses the broader and more important point that his sentencing proceeding reached neither an unreliable nor an unfair result"). We granted certiorari, 504 U. S. 908 (1992), and now reverse.

Our decisions have emphasized that the Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland* v. *Washington, supra,* at 684; *Nix* v. *Whiteside,* 475 U. S. 157, 175 (1986) (noting that under *Strickland,* the "benchmark" of the right to counsel is the "fairness of the adversary proceeding"); *United States* v. *Cronic,* 466 U. S. 648, 653 (1984) ("Without counsel, the right to a trial itself would be of little avail") (internal quotation marks and footnote omitted); *United States* v. *Morrison,* 449

U. S. 361, 364 (1981) (the right to counsel "is meant to assure fairness in the adversary criminal process"). Thus, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States* v. *Cronic, supra*, at 658.

The test formulated in *Strickland* for determining whether counsel has rendered constitutionally ineffective assistance reflects this concern. In *Strickland*, we identified the two components to any ineffective-assistance claim: (1) deficient performance and (2) prejudice.[1] Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U. S., at 687; see also *Kimmelman* v. *Morrison*, 477 U. S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *Nix* v. *Whiteside, supra*, at 175. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.[2] To set aside a conviction or sentence solely because the outcome

---

[1] Petitioner concedes that counsel's performance was deficient. He therefore focuses his argument exclusively on the prejudice component.

[2] Contrary to the dissent's suggestion, today's decision does not involve or require a harmless-error inquiry. Harmless-error analysis is triggered only *after* the reviewing court discovers that an error has been committed. And under *Strickland* v. *Washington*, 466 U. S. 668 (1984), an error of constitutional magnitude occurs in the Sixth Amendment context only if the defendant demonstrates (1) deficient performance and (2) prejudice. Our opinion does nothing more than apply the case-by-case prejudice inquiry that has always been built into the *Strickland* test. Since we find no constitutional error, we need not, and do not, consider harmlessness.

would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.  See *Cronic, supra,* at 658.

Our decision in *Nix* v. *Whiteside, supra,* makes this very point.  The respondent in that case argued that he received ineffective assistance because his counsel refused to cooperate in presenting perjured testimony.  Obviously, had the respondent presented false testimony to the jury, there might have been a reasonable probability that the jury would not have returned a verdict of guilty.  Sheer outcome determination, however, was not sufficient to make out a claim under the Sixth Amendment.  We held that "as a matter of law, counsel's conduct . . . cannot establish the prejudice required for relief under the second strand of the *Strickland* inquiry." 475 U. S., at 175.  The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" *Ibid.* (quoting *Strickland, supra,* at 695); see also *Nix* v. *Whiteside, supra,* at 186–187 (BLACKMUN, J., concurring in judgment) ("To the extent that Whiteside's claim rests on the assertion that he would have been acquitted had he been able to testify falsely, Whiteside claims a right the law simply does not recognize. . . . Since Whiteside was deprived of neither a fair trial nor any of the specific constitutional rights designed to guarantee a fair trial, he has suffered no prejudice").[3]

---

[3] The dissent's attempt to distinguish *Nix* v. *Whiteside,* 475 U. S. 157 (1986), is unpersuasive because it ignores the reasoning employed by the Court.  In *Nix,* we did not reject the respondent's claim of prejudice because perjury is "perhaps a paradigmatic example" of lawlessness.  *Post,* at 382–383.  Rather, we held that the respondent could not show *Strickland* prejudice merely by demonstrating that the outcome would have been different but for counsel's behavior.  *Nix, supra,* at 175–176.  Contrary to the dissent's suggestion, this reasoning was not invoked to resolve the factual oddity of one case, but rather represents a straightforward application of the rule of law announced in *Strickland.*  *Nix, supra,* at 175–176.

The result of the sentencing proceeding in the present case was neither unfair nor unreliable. The Court of Appeals, which had decided *Collins* in 1985, overruled it in *Perry* four years later.[4] Had the trial court chosen to follow *Collins,* counsel's error would have "deprived respondent of the chance to have the state court make an error in his favor." Brief for United States as *Amicus Curiae* 10.[5]

Respondent argues that the use of hindsight is inappropriate in determining "prejudice" under *Strickland,* and that this element should be determined under the laws existing at the time of trial. For support, he relies upon language used in *Strickland* in discussing the first part of the necessary showing—deficient performance. We held that in order to determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U. S., at 690.

---

[4] Respondent argues that *Collins* v. *Lockhart,* 754 F. 2d 258 (CA8), cert. denied, 474 U. S. 1013 (1985), is still good law despite our decision in *Lowenfield* v. *Phelps,* 484 U. S. 231 (1988), and urges us to decide this question as a threshold matter. We decline the invitation. A premise underlying the question presented was that *Collins* had been properly overruled by the Eighth Circuit. Because respondent "failed to bring [his] objections to the premise underlying the questio[n] presented to our attention in [his] opposition to the petition for certiorari," we decide that question based on the Eighth Circuit's view that *Collins* is no longer good law. *Eastman Kodak Co.* v. *Image Technical Services, Inc.,* 504 U. S. 451, 465–466, n. 10 (1992).

[5] As an alternative argument, the Solicitor General relies upon the language of the habeas corpus statute, 28 U. S. C. § 2254(a), which provides that habeas relief may issue only if the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." According to the Solicitor General, because *Lowenfield* was decided at the time respondent petitioned for federal habeas relief, he could not argue that he was currently in custody in violation of the Constitution. Because of our disposition of the case on the basis of *Strickland* v. *Washington, supra,* we do not address this contention.

Ineffective-assistance-of-counsel claims will be raised only in those cases where a defendant has been found guilty of the offense charged, and from the perspective of hindsight there is a natural tendency to speculate as to whether a different trial strategy might have been more successful. We adopted the rule of contemporary assessment of counsel's conduct because a more rigid requirement "could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Ibid.* But the "prejudice" component of the *Strickland* test does not implicate these concerns. It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Id.*, at 687; see *Kimmelman*, 477 U. S., at 393 (Powell, J., concurring). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. As we have noted, it was the premise of our grant in this case that *Perry* was correctly decided, *i. e.*, that respondent was not entitled to an objection based on "double counting." Respondent therefore suffered no prejudice from his counsel's deficient performance.

The dissent contends that this holding is inconsistent with the retroactivity rule announced in *Teague* v. *Lane*, 489 U. S. 288, 310 (1989), but we think otherwise. *Teague* stands for the proposition that new constitutional rules of criminal procedure will not be announced or applied on collateral review. *Id.*, at 310. As the dissent acknowledges, *post*, at 387, this retroactivity rule was motivated by a respect for the States' strong interest in the finality of criminal convictions, and the recognition that a State should not be penalized for relying on "the constitutional standards that prevailed at the time the original proceedings took place." *Teague, supra,* at 306 (plurality opinion) (internal citations omitted). "The 'new rule' principle therefore validates reasonable, good-faith in-

terpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler* v. *McKellar*, 494 U. S. 407, 414 (1990).

A federal habeas petitioner has no interest in the finality of the state-court judgment under which he is incarcerated: Indeed, the very purpose of his habeas petition is to overturn that judgment. Nor does such a petitioner ordinarily have any claim of reliance on past judicial precedent as a basis for his actions that corresponds to the State's interest described in the quotation from *Butler, supra.* The result of these differences is that the State will benefit from our *Teague* decision in some federal habeas cases, while the habeas petitioner will not. This result is not, as the dissent would have it, a "windfall" for the State, but instead is a perfectly logical limitation of *Teague* to the circumstances which gave rise to it. *Cessante ratione legis, cessat et ipsa lex.*

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE O'CONNOR, concurring.

I join the Court's opinion and concur in its judgment. I write separately only to point out that today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland* v. *Washington*, 466 U. S. 668 (1984). The determinative question—whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694—remains unchanged. This case, however, concerns the unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry. As we explained in *Strickland*, certain factors, real though they may be, simply cannot be taken into account:

> "An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like.

A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Id.*, at 695.

Since *Strickland,* we have recognized that neither the likely effect of perjured testimony nor the impact of a meritless Fourth Amendment objection is an appropriate consideration in the prejudice inquiry. *Nix* v. *Whiteside,* 475 U. S. 157 (1986) (failure to put on perjured testimony); *Kimmelman* v. *Morrison,* 477 U. S. 365, 382 (1986) (where the defendant claims that the deficient performance was failure to make a suppression motion, "a *meritorious* Fourth Amendment issue is necessary to the success of a Sixth Amendment claim" (emphasis added)).

Today the Court identifies another factor that ought not inform the prejudice inquiry. Specifically, today we hold that the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission. That narrow holding, of course, precisely disposes of this case as it appeared before the Eighth Circuit. The omitted objection of which respondent complained very well may have been sustained had it been raised at trial. But by the time the Eighth Circuit reviewed respondent's ineffective assistance claim, on-point Circuit authority bound that court to hold the objection meritless; the Arkansas Supreme Court had rejected the objection as well. *Perry* v. *Lockhart,* 871 F. 2d 1384, 1392–1394 (CA8), cert. denied, 493 U. S. 959 (1989); *O'Rourke* v. *State,* 295 Ark. 57, 63–64, 746 S. W. 2d 52, 55–56 (1988). Consequently, respondent's claim of

prejudice was based not on the allegation that he was denied an advantage the law might permit him. It was predicated instead on the suggestion that he might have been denied "a right the law simply does not recognize," *Nix, supra,* at 186–187 (BLACKMUN, J., concurring in judgment), namely, the right to "have the state court make an error in his favor," *ante,* at 371 (opinion of the Court) (internal quotation marks omitted). It seems to me that the impact of advocating a decidedly incorrect point of law, like the influence of perjured testimony, is not a proper consideration when assessing "the likelihood of a result more favorable to the defendant." *Strickland, supra,* at 695. I therefore join the Court in holding that, in these somewhat unusual circumstances, the Court of Appeals should have concluded that respondent suffered no legally cognizable prejudice.

JUSTICE THOMAS, concurring.

I join the Court's opinion in its entirety. I write separately to call attention to what can only be described as a fundamental misunderstanding of the Supremacy Clause on the part of the Court of Appeals.

In concluding that respondent had been prejudiced by his attorney's failure to make an objection based upon *Collins* v. *Lockhart,* 754 F. 2d 258 (CA8), cert. denied, 474 U. S. 1013 (1985), the Court of Appeals said the following: "[S]ince state courts are bound by the Supremacy Clause to obey federal constitutional law, we conclude that a reasonable state trial court would have sustained an objection based on *Collins* had Fretwell's attorney made one." 946 F. 2d 571, 577 (CA8 1991). I do not understand this statement to mean that there is a reasonable probability that the Arkansas trial court would have found *Collins* persuasive, and therefore would have chosen to follow it. Instead, the Court of Appeals appears to have been under the impression that the Arkansas trial court would have been compelled to follow *Collins* by the Supremacy Clause.

It was mistaken. The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation. In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located. See *Steffel* v. *Thompson*, 415 U. S. 452, 482, n. 3 (1974) (REHNQUIST, J., concurring); *United States ex rel. Lawrence* v. *Woods*, 432 F. 2d 1072, 1075–1076 (CA7 1970), cert. denied, 402 U. S. 983 (1971); Shapiro, State Courts and Federal Declaratory Judgments, 74 Nw. U. L. Rev. 759, 771, 774 (1979). An Arkansas trial court is bound by this Court's (and by the Arkansas Supreme Court's and Arkansas Court of Appeals') interpretation of federal law, but if it follows the Eighth Circuit's interpretation of federal law, it does so only because it chooses to and not because it must.

I agree with the Court's holding that the Court of Appeals misinterpreted the Sixth Amendment. I wish to make it clear that it misinterpreted the Supremacy Clause as well.

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

Concerned that respondent Fretwell would otherwise receive the "windfall" of life imprisonment, see *ante,* at 366, 370, the Court today reaches the astonishing conclusion that deficient performance by counsel does not prejudice a defendant even when it results in the erroneous imposition of a death sentence. The Court's aversion to windfalls seems to disappear, however, when the State is the favored recipient. For the end result in this case is that the State, through the coincidence of inadequate representation and fortuitous timing, may carry out a death sentence that was invalid when imposed.

This extraordinary result rests entirely on the retrospective application of two changes in the law occurring after respondent's trial and sentencing. The first of these changes, on which the Court relies explicitly, affected the eligibility of defendants like Fretwell for the death penalty. The second change, never directly identified as such, is the Court's unprincipled transformation of the standards governing ineffective-assistance claims, through the introduction of an element of hindsight that has no place in our Sixth Amendment jurisprudence.

In my view, the Court of Appeals correctly determined that "fundamental unfairness exists when a prisoner receives a death sentence rather than life imprisonment solely because of his attorney's error."[1] The Court's *post hoc* rationale for avoiding this conclusion, self-evident until today, is both unconvincing and unjust.

## I

"Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself." *Cuyler* v. *Sullivan*, 446 U. S. 335, 343 (1980). For that reason, we have held squarely that the right to counsel guaranteed by the Constitution is a right to the "effective assistance of counsel." See *United States* v. *Cronic*, 466 U. S. 648, 654 (1984). Absent competent counsel, ready and able to subject the prosecution's case to the "crucible of meaningful adversarial testing," there can be no guarantee that the adversarial system will function properly to produce just and reliable results. *Id.*, at 656. See *Strickland* v. *Washington*, 466 U. S. 668, 684–687 (1984).

In some cases, the circumstances surrounding a defendant's representation so strongly suggest abridgment of the

---

[1] 946 F. 2d 571, 577 (CA8 1991).

right to effective assistance that prejudice is presumed. When, for instance, counsel is prevented from offering assistance during a critical phase of the proceedings,[2] or labors under a conflict of interest that affects her performance,[3] then we assume a breakdown in the adversarial process that renders the resulting verdict unreliable. See *United States* v. *Cronic*, 466 U. S., at 658–660. We need not, even if we could, inquire further into the precise nature of the prejudice sustained. See *Glasser* v. *United States*, 315 U. S. 60, 75–76 (1942). It is enough that the adversarial testing envisioned by the Sixth Amendment has been thwarted; the result is constitutionally unacceptable, and reversal is automatic. See *United States* v. *Cronic*, 466 U. S., at 656–657; *Holloway* v. *Arkansas*, 435 U. S. 475, 489 (1978).[4]

In *Strickland* v. *Washington*, 466 U. S. 668 (1984), the Court decided that certain errors by counsel will give rise to a similar presumption of adversarial breakdown. Because the consequences that attend such a presumption—the setting aside of a conviction or sentence—are so serious, the Court took pains to limit the class of errors that would support an ineffective-assistance claim. First, an error must be so egregious that it indicates "deficient performance" by counsel, falling outside the "wide range of reasonable profes-

---

[2] See, *e. g.*, *Geders* v. *United States*, 425 U. S. 80 (1976) (attorney-client consultation prevented during overnight recess); *Hamilton* v. *Alabama*, 368 U. S. 52 (1961) (assistance denied during arraignment).

[3] See, *e. g.*, *Cuyler* v. *Sullivan*, 446 U. S. 335 (1980) (actual conflict adversely affecting performance constitutes reversible error); *Glasser* v. *United States*, 315 U. S. 60 (1942) (joint representation of codefendants with inconsistent interests, over objection, constitutes reversible error).

[4] "[T]his Court has concluded that the assistance of counsel is among those constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error. Accordingly, when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic." *Holloway* v. *Arkansas*, 435 U. S., at 489 (internal quotation marks and citation omitted).

sional assistance." *Id.*, at 687, 689. Second, the error must be so severe that it gives rise to prejudice, defined quite clearly in *Strickland* as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694. Many significant errors, as the Court recognized in *Kimmelman* v. *Morrison*, 477 U. S. 365, 381–382 (1986), will not meet this "highly demanding" standard. But those that do will require reversal, not because they deprive a defendant of some discrete and independent trial right, but because, as *Strickland* held, they reflect performance by counsel that has "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U. S., at 686.

Under this well-established standard, as the District Court and Court of Appeals both determined, respondent is entitled to relief on his ineffective-assistance claim. That his counsel's performance was so wanting that it was "deficient" for *Strickland* purposes is not contested. Nor can it be seriously disputed that the decision reached would "reasonably likely have been different," *id.*, at 696, but for counsel's failure to make a double-counting objection supported by Eighth Circuit law.[5] Under *Strickland*, this is the end of the inquiry. Respondent has identified an error of such magnitude that it falls within the narrow class of attorney errors precluding reliance on the outcome of the proceeding. See *id.*, at 691–692. In Sixth Amendment terms, it is as though respondent had shown an actual conflict of interest, or the complete absence of counsel during some part of the sentencing proceeding: The adversary process has malfunctioned, and the resulting verdict is therefore, and without more, constitutionally unacceptable.

---

[5] Neither petitioner nor the Court today directly challenges the District Court's unambiguous conclusion that "the trial court would have followed the ruling in *Collins* had trial counsel made an appropriate motion." 739 F. Supp. 1334, 1337 (ED Ark. 1990).

This is not, however, the standard that the Court applies today. Instead, the Court now demands that respondent point to some *additional* indicia of unreliability, some specific way in which the breakdown of the adversarial process affected respondent's discrete trial rights. *Ante,* at 369–370. But this is precisely the kind of harmless-error inquiry that the Court has rejected, time and again, in the Sixth Amendment context. When a criminal proceeding "loses its character as a confrontation between adversaries," *United States* v. *Cronic,* 466 U. S., at 656–657, the harm done a defendant is as certain as it is difficult to define. Accordingly, we consistently have declined to require that a defendant who faces the State without adequate assistance show how he is harmed as a result. See *Cuyler* v. *Sullivan,* 446 U. S., at 349; *Holloway* v. *Arkansas,* 435 U. S., at 489–491; *Hamilton* v. *Alabama,* 368 U. S. 52, 55 (1961); *Williams* v. *Kaiser,* 323 U. S. 471, 475–477 (1945). "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser* v. *United States,* 315 U. S., at 76.[6]

---

[6] It is worth noting that *Kimmelman* v. *Morrison,* 477 U. S. 365 (1986), is entirely consistent with this line of case law, rendering petitioner's reliance on that case misplaced. In *Kimmelman,* the Court held that although certain Fourth Amendment violations are themselves not cognizable on federal habeas review, see *Stone* v. *Powell,* 428 U. S. 465 (1976), counsel's failure to litigate such Fourth Amendment claims competently may still give rise to a cognizable ineffective-assistance claim. In other words, attorney error gives rise to an ineffective-assistance claim not because it is connected to some other, independent right to which a defendant is entitled, but because in itself it "upset[s] the adversarial balance between defense and prosecution," so that the trial is rendered unfair and the verdict suspect. 477 U. S., at 374.

That *Kimmelman* at one point refers to the necessity for a "meritorious" Fourth Amendment claim, *id.,* at 382, as emphasized by JUSTICE O'CONNOR in her concurrence, *ante,* at 374, represents no more than straightforward application of *Strickland*'s outcome-determinative test for

The Court compounds its error by insisting that respondent make his newly required showing from the vantage point of hindsight. Hindsight has no place in a Sixth Amendment jurisprudence that focuses, quite rightly, on protecting the adversarial balance at trial. Respondent was denied "the assistance necessary to justify reliance on the outcome of the proceeding," *Strickland* v. *Washington*, 466 U. S., at 692, because his counsel's performance was so far below professional standards that it satisfied *Strickland*'s first prong, and so severely lacking that the verdict "would reasonably likely have been different absent the errors," *id.*, at 696, under the second prong. It is simply irrelevant that we can now say, with hindsight, that had counsel failed to make a double-counting objection four years after the fact, his performance would have been neither deficient nor prejudicial. For as it happened, counsel's failure to object came at a time when it signified a breakdown in the adversarial process. A *post hoc* vision of what would have been the case years later has no bearing on the force of this showing.

Not surprisingly, the Court's reliance on hindsight finds no support in *Strickland* itself. *Strickland* makes clear that the merits of an ineffective-assistance claim must be "viewed as of the time of counsel's conduct." *Id.*, at 690. As the Court notes, this point is stated explicitly with respect to *Strickland*'s first prong, the quality of counsel's performance. *Ante*, at 371–372. What the Court ignores, however, is that the same point is implicit in *Strickland*'s entire discussion of the second prong. By defining prejudice in terms of the effect of counsel's errors on the outcome of the proceedings,

---

prejudice. Simply put, an attorney's failure to make a Fourth Amendment objection will not alter the outcome of a proceeding if the objection is meritless, and hence would not be sustained. Nothing in *Kimmelman* suggests that failure to make an objection supported by current precedent, and hence likely to be sustained, would amount to anything less than ineffective assistance.

based on the "totality of the evidence before the judge or jury," 466 U. S., at 695, the *Strickland* Court establishes its point of reference firmly at the time of trial or sentencing.

To justify its revision of the *Strickland* standards for judging ineffective-assistance claims, the Court relies in large part on *Nix* v. *Whiteside*, 475 U. S. 157 (1986). *Ante,* at 370. *Nix* cannot, however, perform the heavy duty the Court assigns it. A rather unusual case, *Nix* involved a claim that counsel was ineffective because he refused to present a defense based on perjured testimony. It should suffice to say here that reliance on perjured testimony and reliance on current Court of Appeals case law are not remotely comparable, and that to suggest otherwise is simply disingenuous. But if further distinction is needed, we need not search far to find it.

First, the Court's decision in *Nix* rests in part on the conclusion that counsel's refusal to cooperate in presentation of perjury falls "well within . . . the range of reasonable professional conduct acceptable under *Strickland*." *Nix* v. *Whiteside,* 475 U. S., at 171; cf. *United States* v. *Cronic*, 466 U. S., at 656, n. 19 ("Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one . . ."). In other words, ineffective-assistance claims predicated on failure to make wholly frivolous or unethical arguments will generally be dispensed with under *Strickland*'s first prong, without recourse to the second, and hence will not raise the questions at issue in this case.

To the extent that *Nix* does address *Strickland*'s second, or "prejudice," prong, it does so in a context quite different from that presented here. In *Strickland*, the Court cautioned that assessment of the likelihood of a different outcome should exclude the possibility of "a lawless decisionmaker," who fails to "reasonably, conscientiously, and impartially appl[y] the standards that govern the decision." 466 U. S., at 695. The *Nix* Court faced what is perhaps a

paradigmatic example of the "lawlessness" to which *Strickland* referred, in the suggestion that perjured testimony might have undermined the decisionmaker's judgment, and concluded quite correctly that the defendant could not rely on any outcome-determinative effects of perjury to make his claim. *Nix* v. *Whiteside*, 475 U. S., at 175; see also *id.*, at 186 (BLACKMUN, J., concurring in judgment). I do not read the Court's decision today as suggesting that a state trial court need fear the label "lawless" if it follows the decision of a United States Court of Appeals on a matter of federal constitutional law. Accordingly, *Nix*'s discussion of perjury and lawlessness is simply inapposite to the issues presented here.

## II

It is not disputed in this case that the performance of respondent's counsel was so deficient that it met the *Strickland* standard. What deserves emphasis here is the proven connection between that deficiency and the outcome of respondent's sentencing proceeding, as well as the presumptive effect of counsel's performance on the adversarial process itself.

Respondent was convicted of committing murder in the course of a robbery. The Arkansas trial court then held a separate sentencing hearing, devoted exclusively to the question whether respondent was eligible for the death penalty, or would instead receive a life sentence without parole. The State relied on two aggravating circumstances to establish its right to execute respondent. The first—the alleged purpose of avoiding arrest—was found by the jury to be unsupported by the evidence. The second—that the felony was committed for purposes of pecuniary gain—was obviously supported by the evidence, as respondent had already been convicted of robbery in connection with the murder. Thus, the critical question on which respondent's death eligibility turned was whether it was permissible, as a matter of law, to "double count" by relying on pecuniary gain as an

aggravating circumstance and also on robbery as an element of the crime.

Counsel's duty at this stage of the proceedings was clear. In addition to general investigation and preparation for the penalty phase, counsel's primary obligation was to advise the trial judge about the correct answer to this crucial question of law. Had he handled this professional responsibility with anything approaching the "reasonableness" demanded by *Strickland*, 466 U. S., at 687–691, he would have found an Eighth Circuit case directly in point, addressing the same Arkansas statute under which respondent was sentenced and holding such double counting unconstitutional. *Collins* v. *Lockhart*, 754 F. 2d 258, 261–265, cert. denied, 474 U. S. 1013 (1985). The failure to find that critically important case constitutes irrefutable evidence of counsel's inadequate performance. The fact that *Collins* was later overruled does not minimize in the slightest the force of that evidence.

Moreover, had counsel made a *Collins* objection to the pecuniary gain aggravating circumstance, we must assume that the trial court would have sustained it. As the District Court stated: "Although *Collins* has since been overruled, it was the law in the Eighth Circuit at the time of [respondent's] trial and this Court has no reason to believe that the trial court would have chosen to disregard it." 739 F. Supp. 1334, 1337 (ED Ark. 1990). Neither petitioner nor the Court relies on disagreement with this finding. See n. 5, *supra*. Nor could they. As we explained in *Strickland*, it is not open to the State to argue that an idiosyncratic state trial judge might have refused to follow circuit precedent and overruled a *Collins* objection. 466 U. S., at 695.

Applying *Strickland* to these facts, the District Court correctly held that counsel's failure to call the trial judge's attention to *Collins* constituted ineffective assistance and "seriously undermined the proper functioning of the adversarial process." 739 F. Supp., at 1336. Because it granted relief on this basis, the District Court found it unnecessary to

reach additional ineffective-assistance claims predicated on counsel's alleged failure to investigate or prepare for the penalty phase. *Id.*, at 1337–1338.[7] By the time the case reached the Court of Appeals, deficient performance was conceded, and the Eighth Circuit had only to affirm the District Court conclusion that "a reasonable state trial court would have sustained an objection based on *Collins* had Fretwell's attorney made one." 946 F. 2d, at 577.[8]

Thus, counsel's deficient performance, in the form of his failure to discover *Collins* and bring it to the court's attention, is directly linked to the outcome of respondent's sentencing proceeding. Because of counsel's error, respondent received the death penalty rather than life imprisonment.

---

[7] It should come as no surprise that counsel's conduct gave rise to additional ineffective-assistance claims, founded on other deficiencies. An attorney who makes one error of *Strickland* proportions is unlikely to have turned in a performance adequate in all other respects. For instance, it may well be more than coincidence that the same counsel who failed to discover United States Court of Appeals precedent holding application of the Arkansas capital sentencing statute to defendants like his client unconstitutional also failed to convince the jury of the existence of any mitigating circumstances in his client's favor. 739 F. Supp., at 1335. The connection in this case between counsel's failure to make a *Collins* objection and his overall preparation and investigation for the penalty phase seems perfectly clear. Nothing in the Court's opinion today would preclude the District Court, on remand, from considering the lack of an objection as evidence relevant to the larger question of the adequacy of counsel's penalty phase preparation and investigation.

[8] I cannot agree with the gloss put on the opinion below by the Court, *ante*, at 368, and by JUSTICE THOMAS in his concurrence, *ante*, at 375. There is nothing in the text of that opinion to suggest that the Court of Appeals believed the Arkansas trial court bound by the Supremacy Clause to obey Eighth Circuit precedent. The Court of Appeals simply noted that the trial court was "bound by the Supremacy Clause to obey *federal constitutional law*," 946 F. 2d, at 577 (emphasis added), which is why Eighth Circuit precedent giving content to that law would have been relevant to the trial court's decisionmaking. I see no reason to infer from its plain and correct statement of the law that the Eighth Circuit actually meant to express the view addressed by JUSTICE THOMAS.

946 F. 2d, at 577. Under *Strickland,* of course, respondent need not show quite so much; it is sufficient that "the decision reached would reasonably likely have been different absent the errors." 466 U. S., at 696. *A fortiori,* a showing of outcome determination as strong as that made here is enough to support a *Strickland* claim.

In my judgment, respondent might well be entitled to relief even if he could not show prejudice as defined by *Strickland*'s second prong. The fact that counsel's performance constituted an abject failure to address the most important legal question at issue in his client's death penalty hearing gives rise, without more, to a powerful presumption of breakdown in the entire adversarial system. That presumption is at least as strong, if not stronger, than the inferences of adversarial malfunction that required reversal in cases like *Holloway* and *Glasser,* see *supra,* at 377–378. In other words, there may be exceptional cases in which counsel's performance falls so grievously far below acceptable standards under *Strickland*'s first prong that it functions as the equivalent of an actual conflict of interest, generating a presumption of prejudice and automatic reversal. I think this may well be one of those cases in which, as we wrote in *Holloway,* reversal would be appropriate "even if no particular prejudice is shown and even if the defendant was clearly guilty." 435 U. S., at 489 (internal quotation marks and citation omitted).

Of course, we need not go nearly so far to resolve the case before us. Under the *Strickland* standard that prevailed until today, respondent is entitled to relief on his ineffective-assistance claim, having shown both deficient performance and a reasonable likelihood of a different outcome. The Court can avoid this result only by effecting a dramatic change in that standard, and then applying it retroactively to respondent's case. In my view, the Court's decision marks a startling and most unwise departure from our commitment

to a system that ensures fairness and reliability by subjecting the prosecution's case to meaningful adversarial testing.

## III

Changes in the law are characteristic of constitutional adjudication. Prior to 1985, most of those changes were in the direction of increasing the protection afforded an individual accused of crime. To vindicate the legitimate reliance interests of state law enforcement authorities, however, and in recognition of the state interest in preserving the outcome of trials adhering to contemporaneous standards, the Court often refused to apply its new rules retroactively.[9] In *Teague* v. *Lane,* 489 U. S. 288, 310 (1989), the Court gave full expression to its general policy of allowing States "to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards," holding that the claims of federal habeas petitioners will, in all but exceptional cases, be judged under the standards prevailing at the time of trial.[10]

Since 1985, relevant changes in the law often have been in a different direction, affording less rather than more protec-

---

[9] See, *e. g., Stovall* v. *Denno,* 388 U. S. 293, 300 (1967) ("factors of reliance and burden on the administration of justice" mandate against retroactive application of *United States* v. *Wade,* 388 U. S. 218 (1967), and *Gilbert* v. *California,* 388 U. S. 263 (1967), establishing right to counsel at pretrial identification); *Johnson* v. *New Jersey,* 384 U. S. 719 (1966) (declining to apply *Miranda* v. *Arizona,* 384 U. S. 436 (1966), retroactively); *Tehan* v. *United States ex rel. Shott,* 382 U. S. 406 (1966) (*Griffin* v. *California,* 380 U. S. 609 (1965), prohibiting adverse comment on a defendant's silence, does not apply retroactively).

[10] See also *Engle* v. *Isaac,* 456 U. S. 107, 128–129, n. 33 (1982) (discussing "frustration" of state courts when they "faithfully apply existing constitutional law" only to have change in constitutional standards applied retroactively).

tion to individual defendants.[11]  An evenhanded approach to retroactivity would seem to require that we continue to evaluate defendants' claims under the law as it stood at the time of trial.  If, under *Teague*, a defendant may not take advantage of subsequent changes in the law when they are favorable to him, then there is no self-evident reason why a State should be able to take advantage of subsequent changes in the law when they are adverse to his interests.

The Court, however, takes a directly contrary approach here.  Today's decision rests critically on the proposition that respondent's ineffective-assistance claim is to be judged under the law as it exists today, rather than the law as it existed at the time of trial and sentencing.  *Ante*, at 372. In other words, respondent must make his case under *Perry* v. *Lockhart*, 871 F. 2d 1384 (CA8), cert. denied, 493 U. S. 959 (1989), decided four years after his sentencing; unlike the State, he is not entitled to rely on "then-existing constitutional standards," *Teague*, 489 U. S., at 310, which rendered him ineligible for the death penalty at the time that sentence was imposed.

I have already explained why the Court's reliance on hindsight is incompatible with our right to counsel jurisprudence. It is also, in my judgment, inconsistent with case law that insists on contemporaneous constitutional standards as the benchmark against which defendants' claims are to be measured.  A rule that generally precludes defendants from taking advantage of postconviction changes in the law, but allows the State to do so, cannot be reconciled with this

---

[11] See, *e. g., Payne* v. *Tennessee*, 501 U. S. 808 (1991) (Eighth Amendment does not preclude use of victim impact evidence against capital defendant at sentencing; overruling *Booth* v. *Maryland*, 482 U. S. 496 (1987), and *South Carolina* v. *Gathers*, 490 U. S. 805 (1989)); *Arizona* v. *Fulminante*, 499 U. S. 279 (1991) (harmless-error rule applicable to admission of involuntary confessions); *Duckworth* v. *Eagan*, 492 U. S. 195 (1989) (*Miranda* warnings adequate despite suggestion that lawyer will not be appointed until after interrogation); *Florida* v. *Riley*, 488 U. S. 445 (1989) (police may search greenhouse from helicopter at altitude of 400 feet without warrant).

Court's duty to administer justice impartially. Elementary fairness dictates that the Court should evaluate respondent's ineffective-assistance claim under the law as it stood when he was convicted and sentenced—under *Collins*, and also under *Strickland* as it was understood until today.

As I see it, the only windfall at issue here is the one conferred upon the State by the Court's decision. Had respondent's counsel rendered effective assistance, the State would have been required to justify respondent's execution under a legal regime that included *Collins*. It is highly unlikely that it could have met this burden in the Arkansas courts, see *supra*, at 384–385, and it almost certainly could not have done so in the federal courts on habeas review. Now, however, the State is permitted to exploit the ineffective assistance of respondent's counsel, and the lapse in time it provided, by capitalizing on postsentencing changes in the law to justify an execution. Because this windfall is one the Sixth Amendment prevents us from bestowing, I respectfully dissent.