David **AGUNLOYE**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 97 C 5810.

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1998.

Joshua Sachs, Sachs & Drake, Morton Grove, IL, for Petitioner.

David Agunloye, Waseca, MN, pro se.

Morris O. Pasqual, United States Attorney's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the court on petitioner David Agunloye's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. For the following reasons, Agunloye's motion under section 2255 is denied.

### I. BACKGROUND

In January of 1995, a grand jury returned a five-count indictment against petitioner David Agunloye and codefendants Tony Laniyan and Ayodele Odunuga. Count I charged defendants with conspiring with each other and with others to knowingly conduct financial transactions involving property represented to be the proceeds of narcotics trafficking, with the intent to conceal and disguise the nature, location, ownership and control of those proceeds, in violation of 18 U.S.C. §§ 371 and 1956(a)(3). Counts II through V charged each defendant with knowingly conducting financial transactions involving property represented to be the proceeds of narcotics trafficking, with the intent to conceal and disguise the nature, location, ownership and control of those proceeds, in violation of 18 U.S.C. § 1956(a)(3).

In March of 1996, the case was tried before a jury. The jury found Agunloye guilty of counts I, III, IV and V, and not guilty of count II. Apparently not pleased with his trial counsel, James Montgomery, Agunloye filed a motion for an emergency appointment of new counsel. The court appointed Federal Defender Daniel Martin to represent Agunloye at sentencing.

On August 13, 1996, Agunloye was sentenced to 60 months imprisonment on count I and 63 months imprisonment on counts III, IV and V, all to be served concurrently. Agunloye's sentence was based on an offense level of 24 and a criminal history category of I, resulting in a sentencing range of 51 to 63 months.[1]

## II. *DISCUSSION*

Agunloye attacks his conviction and sentence by contending that both his trial counsel, Montgomery, and his sentencing counsel, Martin, performed ineffectively. These arguments will be addressed in turn.

### A. *Ineffective assistance of trial counsel*

■ Agunloye first claims that he is entitled to relief under § 2255 because he was denied his Sixth Amendment right to effective assistance of counsel at his trial. This claim raises two issues. The first is whether the claim is procedurally barred. The second is, if the claim is not procedurally barred, whether there is any merit to Agunloye's arguments.

### 1. Procedural bar

Agunloye did not raise the claim that Montgomery was ineffective on direct appeal. Thus, the first issue is whether Agunloye's claim is procedurally barred.

■ Generally, a defendant who does not raise the issue of ineffective assistance of trial counsel in his direct appeal, if the basis of such claim is clear from the record, is barred from raising this otherwise appealable issue collaterally. *See McCleese v. United States,* 75 F.3d 1174, 1176 (7th Cir.1996). However, a defendant is not barred from claiming ineffective assistance of counsel for the first time in collateral proceedings in limited circumstances, such as where the defendant needed additional time to develop extrinsic evidence or where trial and appellate counsel are the same. *Id.* at 1179.

■ In this case, Agunloye had different trial and sentencing counsel and he has not presented any material extrinsic evidence in support of his claim. Thus, Agunloye is procedurally barred unless he can show both cause for his failure to raise the issue on appeal and actual prejudice from counsel's alleged errors. *United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Under certain circumstances prejudice is presumed. One such circumstance is where defendant told his counsel to file an appeal and defendant's counsel failed to do so. *Castellanos v. United States,* 26 F.3d 717, 719–20 (7th Cir.1994). In that case, defendant need only show that he instructed his counsel to appeal. *Id.* at 720.

In this case, Agunloye contends that he told Martin specifically to file an appeal and Martin failed to do so. To support his argument, Agunloye referred to a sworn memorandum in which he claims that he "repeatedly" asked Martin to file an appeal on his behalf. *See* Def.'s Mem. in Supp. of 28 U.S.C. § 2255 Mot. (hereinafter "Def.'s Mem.") at 4. Conversely, Martin states in a sworn affidavit that at no time did Agunloye ever instruct Martin to file an appeal. *See* Gov't. Resp. Ex. A. An evidentiary hearing was held to resolve this discrepancy.

The court finds that Agunloye never instructed Martin to appeal. In reaching this finding, the court relied on the following evidence adduced during the evidentiary hearing: (1) the testimony of the witnesses; (2) a letter from Agunloye to Martin postmarked August 22, 1996; and (3) Agunloye's failure to fire Martin.

During the evidentiary hearing, the court had the unique opportunity to observe the demeanor of the testifying witnesses. Both Martin and Agunloye were called to testify. The court found that Martin, a thirteen-year Federal Defender, was knowledgeable and very credible in his testimony that Agunloye did not request that he appeal. Conversely, the court found Agunloye's testimony to be totally unbelievable. Agunloye testified that he met with Martin on August 13, 1996, immediately after his sentencing, and requested that Martin appeal. Tr. of § 2255

---

1. The court applied the United States Sentencing Guidelines that became effective November 1995 because those are the guidelines that were in effect on the date of sentencing and no *ex post facto* concerns were implicated. 18 U.S.C. § 3553(a)(4); *United States v. Foutris,* 966 F.2d 1158, 1160 (7th Cir.1992).

Evidentiary Hr'g, Mar. 18, 1998 (hereinafter "Tr.") at 44. Agunloye further testified that during the week following his sentencing he called Martin twice from the Metropolitan Correction Center and both times requested that Martin appeal. Tr. at 47–49. Agunloye stated that Martin "shouted" at him that he had no issues to raise on appeal. Tr. at 47. Agunloye further stated that, after his second telephone conversation with Martin, he called Martin every day, three times each day, and left messages that he wanted Martin to appeal his case. Tr. at 50–51.

The government entered into evidence a copy of a letter that Agunloye wrote to Martin on August 21, 1996. *See* Gov't. Ex. 4. In this letter Agunloye thanked Martin "for the good job" that Martin had done during the sentencing hearing and thanked him for his cooperation. Agunloye testified that he wrote this letter after he had spoken twice over the phone with Martin and after he had left several voice mail messages for Martin requesting that he appeal. Tr. at 50. Nowhere in the letter did Agunloye mention his "repeated" telephone calls to Martin, nor did he mention an appeal.

Finally, the court considered that Agunloye had previously fired Montgomery because he was dissatisfied with his services. However, Agunloye continued to retain Martin although he alleges dissatisfaction with Martin's services. Agunloye was obviously aware of his ability to fire counsel and retain new counsel, yet he didn't do this with Martin.

Where Agunloye's testimony conflicted with that of Martin, the court found that Agunloye's testimony was not credible. Thus, the court concluded that Agunloye did not instruct Martin to perfect an appeal from his conviction and sentence. "A lawyer need not appeal unless the client wants to pursue that avenue." *Castellanos,* 26 F.3d at 719. Since the court has found that Agunloye did not request that Martin file an appeal, the court dismisses this argument. As a result of the court's finding, Agunloye has not shown cause and the issues in his § 2255 motion concerning ineffective assistance of trial counsel are procedurally barred.

**2. Merits of arguments alleging ineffective assistance of trial counsel**

Because Agunloye's claims concerning Montgomery's ineffectiveness are procedurally barred, the court need not discuss the merits of Agunloye's arguments. However, even if the court had found that Agunloye's claims were not procedurally barred, they would fail on the merits. Thus, the court will address Agunloye's arguments concerning alleged ineffective assistance of trial counsel.

A criminal defendant is guaranteed the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Generally, in order to establish ineffective assistance of counsel, the defendant must satisfy two prongs: (1) that trial counsel's representation fell below an objective standard of reasonableness ("the performance prong"); and (2) that counsel's deficient performance prejudiced the outcome of the proceedings ("the prejudice prong"). *Id.,* 466 U.S. at 687. The court must evaluate counsel's conduct from his "perspective at the time" and, in so doing, there is a "strong presumption" that counsel rendered reasonably effective assistance. *Id.* at 689.

The Supreme Court clarified the prejudice requirement of *Strickland* in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). In determining whether a defendant has been prejudiced, the court must consider more than mere outcome determination. *Id.,* 506 U.S. at 369. A court must consider whether counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.*

Agunloye offers three instances of Montgomery's alleged ineffective assistance. The court will address each argument in turn.

**a. Failure to adequately investigate defendant's case**

■ Agunloye first alleges that Montgomery's performance has been ineffective because his investigation did not include any "plans, theories, or possible alternatives" to his case. Def.'s Mem. at 2. Without addressing the performance prong, the court rejects this claim for failure to establish prejudice. *See Strickland,* 466 U.S. at 696 (explaining

that a court need not address both prongs if the defendant makes an insufficient showing as to one).

In order for a defendant to establish prejudice, he must identify counsel's specific acts or omissions which form the basis for his ineffective assistance claim. *Id.* at 690. Agunloye asserts that Montgomery failed to adequately investigate his case but, with one exception,[2] he does not specify the "plans, theories, or possible alternatives" that Montgomery may have overlooked. Agunloye's allegation of Montgomery's omissions falls short of satisfying the prejudice prong of *Strickland.* Accordingly, this claim fails on its merits.

### b. Failure to consult with defendant prior to trial on right to plead guilty

■ Agunloye next claims that Montgomery's performance was ineffective because he failed to adequately consult with Agunloye prior to trial concerning whether he should have pleaded guilty and because he failed to discuss the possible penalties which Agunloye would face if he did plead guilty. Def.'s Mem. at 2. For the reasons set forth below, the court rejects this claim for failure to establish prejudice.

Agunloye alleges that Montgomery never mentioned the possibility that Agunloye could have pleaded guilty. *Id.* Agunloye claims that Montgomery's only relevant statement concerning the procedural approach was that Agunloye was "going to trial." *Id.* According to Agunloye's petition, this omission amounts to ineffective assistance of counsel because Montgomery failed to provide Agunloye with "information of enhanced penalties" and Agunloye received an "unexpected enhanced sentence." *Id.*[3]

Agunloye specifically addresses the fact that Montgomery's omissions may have cost him an opportunity to secure a downward departure in sentencing for "acceptance of responsibility." Def.'s Mem. at 3, n. 2. The Sentencing Guidelines allow the court to reduce the offense level by two "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense ..." U.S.S.G. § 3E1.1(a). Agunloye argues that if he had been informed of a possible reduction in his sentence for acceptance of responsibility, he may have pleaded guilty rather than proceed to trial.

The court's focus in this issue is not what the sentencing judge might have done had Agunloye pleaded guilty, rather the court should determine whether the trial counsel's performance was objectively reasonable and whether Agunloye has proven prejudice. Notwithstanding the issue of performance, Agunloye is still not entitled to relief because he has failed to demonstrate how he was prejudiced by going to trial instead of pleading guilty. *See United States v. Faubion,* 19 F.3d 226, 229 (5th Cir.1994) (finding that defendant was not prejudiced when counsel advised her to go to trial rather than plead guilty since a downward departure for acceptance of responsibility is not assumed).

Agunloye is unable to prove that he would have received the downward departure for acceptance of responsibility had he pleaded guilty. The commentary to section 3E1.1 of the Sentencing Guidelines specifically states that a "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 n. 3. In order to earn a downward departure for acceptance of responsibility, Agunloye would have had to truthfully admit the conduct comprising the offenses of his conviction. He refused to do this. The court found that Agunloye did not, before, during or after trial, accept responsibility for his actions. Tr. of Sentencing Proceedings at 25.

---

2. One possible alternative that Agunloye does allege is that he could have pleaded guilty or *nolo contendere.* This point is addressed later in this opinion.

3. As the government notes in its Response to Defendant's § 2255 Petition concerning counsel's failure to inform Agunloye of "enhanced penalties," Agunloye was not subject to enhanced

penalties as that term is commonly understood. *See* 21 U.S.C. § 851 (providing for enhanced penalties under Title 21 for defendants with prior convictions). The court interprets Agunloye's claim to be that his counsel was ineffective, in part, because counsel failed to explain to Agunloye that he might forfeit receiving a downward departure for acceptance of responsibility.

Agunloye further argues that he could have pleaded guilty or *nolo contendere* without losing his right to appeal the question of whether he was entrapped. As a matter of law, this claim must fail.

The Federal Rules of Criminal Procedure allow a defendant to enter "a conditional guilty plea or *nolo contendere*, while reserving in writing the right, on appeal from the judgment, to review the adverse determination of any specified pretrial motion." FED. R.CRIM.P. 11(a)(2). If the defendant prevails on appeal, he will be allowed to withdraw his plea. *Id.* However, entrapment is not an issue that is susceptible to pretrial motion and disposition. *See Eaton v. United States,* 458 F.2d 704, 707 (7th Cir.1972) ("[I]t is well settled that a defendant's plea of guilty admits, in legal effect, the facts as charged and waives all non-jurisdictional defenses. Entrapment is a non-jurisdictional defense on the merits and petitioners have waived their right to assert it.").

If Agunloye had entered a conditional guilty plea, that would have effectively waived his right to the defense of entrapment. Accordingly, Agunloye could not have retained this right and his claim must fail. Moreover, if Agunloye had pleaded guilty, he would not have received the benefit of the jury's verdict of acquittal of count II of the indictment. Since Agunloye has failed to demonstrate prejudice from these alleged errors, this claim is denied.

### c. Defendant's admission of $100,000 transfer

Finally, Agunloye asserts that Montgomery was ineffective because he failed to advise Agunloye that his acknowledgment of transferring the $100,000 was, in fact, the "functional equivalent of a guilty plea." Def.'s Mem. at 2. The court rejects this claim for failure to satisfy either prong of the *Strickland* test.

At trial, Agunloye testified on his own behalf and relied on the defense of entrapment. Agunloye admitted that he received cash from an undercover agent and confidential informant and wired the money to an undercover offshore bank account, but he claimed that he had been entrapped into doing this. This admission was part of the entrapment defense which Agunloye chose to pursue at trial. The fact that Montgomery allowed or encouraged him to take the stand and admit certain elements of the crime charged is not objectively unreasonable. This was a tactical decision and trial counsel is free to make objectively reasonable tactical decisions. *See United States v. Greer,* 737 F.2d 673, 676 (7th Cir.1984); *United States v. Weaver,* 882 F.2d 1128, 1140 (7th Cir.1989) ("Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel."). Having Agunloye testify and admit the commission of an offense may have been Montgomery's only hope of securing an entrapment defense. Because the jury was not convinced of Agunloye's entrapment does not mean that Montgomery's performance was objectively unreasonable.

Moreover, even if Montgomery's performance was objectively deficient, Agunloye must show that he was prejudiced from this error. The government presented tape-recorded and documentary evidence at trial to prove that Agunloye wired the $100,000 to the undercover offshore bank account. As a result, it is unlikely that Agunloye would be able to prove that he was prejudiced because of his testimony admitting the wire transfer. Thus, as Agunloye is unable to satisfy either of the prongs of the *Strickland* test, this claim fails on its merits.

### B. *Ineffective assistance of sentencing counsel*

Agunloye next claims that he is entitled to relief under § 2255 because he was denied his Sixth Amendment right to effective assistance of counsel at his sentencing. Agunloye offers three instances of Martin's alleged ineffective assistance. Each argument will be addressed in turn.

#### 1. Failure to appeal

Agunloye first claims that Martin was ineffective because he failed to file an appeal after Agunloye instructed him to do so. This claim has been discussed earlier in this opinion and fails for the reasons mentioned previously. *See supra* Part II.A.1.

### 2. Failure to object to the use of relevant conduct at sentencing

 The second claim which Agunloye makes against Martin is that he failed to object to the court considering relevant conduct when calculating Agunloye's base offense level. Agunloye argues that he was rightfully acquitted of count II, yet the court used evidence from count II, namely a wire transfer in the amount of $15,000, in calculating the offense level used to determine his sentence. As a result, Agunloye received a one-point enhancement for funds involving more than $100,000. Agunloye's claim is rejected for the reasons set forth below.

In order to determine the base offense level for conspiracy to launder money, a court must apply "[t]he base offense level from the guideline for [money laundering], plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). Section 2S1.1(b)(2) of the guidelines provides for "specific offense characteristic" increases from the base level if the value of the laundered funds exceeded $100,000. U.S.S.G. § 2S1.1(b)(2). In the conspiracy context, such a specific offense characteristic is determined on the basis of "all reasonably foreseeable acts ... of others in furtherance of the jointly undertaken criminal activity...." U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, even though Agunloye was acquitted of count II, the court can use the amount for which he was charged in count II when calculating the base offense level. See U.S.S.G. § 1B1.3, cmt. n. 10 ("Conduct that is ... not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range.").

The court correctly found that, pursuant to the relevant conduct provisions of the Sentencing Guidelines, the conspirators' laundering activities involved more than the $100,000 and a one-point enhancement was warranted. Therefore, Agunloye's claim fails.

### 3. Failure to object to high guideline sentence

 Agunloye's last argument deals with the court's application of the Sentencing Guidelines. Agunloye argues that Martin violated a "duty" when he failed to object to Agunloye's sentence which was in the upper end of the permitted range. The court rejects this argument for the reasons set forth below.

Section 2255 generally does not authorize collateral challenges to a district court's application of the guidelines. *See Scott v. United States*, 997 F.2d 340, 341–43 (7th Cir.1993) ("Only extraordinary circumstances ... coupled with "cause" for not taking a direct appeal—even call for inquiry."). Section 2255 finds extraordinary circumstances when "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Agunloye alleges none of these. Therefore, this sentencing argument is not cognizable on a § 2255 motion.

### III. *CONCLUSION*

For the foregoing reasons, the court denies petitioner David Agunloye's motion under 28 U.S.C. § 2255.