OPINION
Defendant-appellant William Huth appeals his convictions and sentences on three counts of rape, each count with a force specification; six counts of gross sexual imposition; and four counts of corrupting another with drugs. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On May 18, 1998, the Stark County Grand Jury indicted appellant on five counts of rape, in violation of R.C. 2907.02; nine counts of gross sexual imposition, in violation of R.C. 2907.05; and seven counts of corrupting another with drugs, in violation of R.C.2925.02(A)(4)(a) and/or (b). Each rape count carried an attendant force specification. The charges arose out of appellant's sexual molestation of his two daughters, Heather Huth and Heidi Huth; his eldest son, Michael; and two neighbor children, Tiffany Simmons and Steven Simmons. All the children were under the age of thirteen. At his arraignment on June 5, 1998, appellant entered pleas of not guilty to all the charges contained in the indictment. Attorneys Margaret Kanellis and Marie Lane of the Stark County Public Defender's Office were appointed to represent appellant. The trial court scheduled the matter for jury trial on September 14, 1998. On the morning of trial, the trial court permitted the State to amend the indictment to three counts of rape, each with a force specification; six counts of gross sexual imposition; and four counts of corrupting another with drugs. During opening statements, Attorney Kanellis made the following remarks:
MS. KANELLIS: May it please the Court, counsel, Ladies and Gentlemen. I am here to tell you today, yes, inappropriate sexual acts did occur in the Huth home. The defense is not here today to make a denial that anything inappropriate occurred in the home.
So why are we here today, why are we going through this trial. We are going through the trial because while [appellant] accepts responsibility for some things that occurred in his home, there are many allegations against him, many serious allegations that simply did not occur.
These allegations are going to be presented to you today through the testimony of children.
* * *
These children are torn between the love for their father, and they do love their father, and the understanding that, yes, certain sexually inappropriate acts occurred.
* * *
Again it is not the defense's intent to berate these children, but the fact of the matter is while some sexual acts did occur many of the allegations did not occur.
Your job is to listen to the evidence
* * *
Some of the things that the State said were absolutely true. Some inappropriate sexual acts did occur in the Huth home.
* * * [I]t is your job to listen to direct and cross-examination; and the evidence will provide the key facts which will bear on your interpretation of the evidence.
Ladies and Gentlemen, it is your interpretation of that evidence and how you apply it to the law that the Judge gives you that matters, not what the State tells you the evidence is going to show.
It is the defense's assertion that if you listen to the evidence you will come to a different conclusion.
* * *
Unless the State proves each and every element of each charge, there can not be a guilty finding.
I want to ask you all to listen with an open mind. Yesterday we were here and you all promised us that you would be able to consider the evidence separately as to each count and decide each count separately based on what the evidence shows, what did occur and what did not occur.
Ladies and Gentlemen, that is all that we are asking you to do. * * * you will see that [appellant] has been accused by the State of Ohio of things which they can not prove and things which simply did not happen.
Transcript of the Proceedings, Vol. II at 216-220.
At trial, Marti Martin, an in-take worker with the Stark County Department of Human Services (SCDHS), testified SCDHS initially became involved with appellant and his family in July, 1997, as the result of a hot line referral. Martin interviewed appellant's children, who denied the allegations. Based upon the interviews, SCDHS closed the case. In September, 1997, SCDHS reopened the case after receiving additional referrals about appellant inappropriately touching three of his five children and two neighbor children. After speaking with all of the children involved, Martin determined further investigation was warranted. Martin made referrals for physical and psychological examinations of all of the children. Thereafter, Martin's responsibilities in the case ended. Heather Huth, who was age fourteen at the time of trial, was the first of her siblings to testify. She explained she, Heidi, and Michael decided to live with appellant after he and their mother divorced because appellant afforded the children more privileges than their mother afforded them. The remainder of Heather's testimony graphically detailed appellant's molestation of her, which began within a week or two of the children's moving in with appellant. Heather was ten or eleven years old at the time. Heather described how appellant initially touched only her arms and legs, but soon began fondling her breasts and touching her vagina. The incidents escalated to oral sex and vaginal intercourse. Heidi Huth, who was age thirteen at the time of trial, testified she chose to live with appellant after her parents divorced because appellant gave her more freedom and more material belongings than her mother gave her. Although she enjoyed living with appellant, Heidi acknowledged he did things to her she did not like. She proceeded to describe appellant's molestation of her, which included digital penetration, oral sex, and vaginal intercourse. In addition, Heidi recalled appellant sitting on his bed next to her while Steven Simmons, an eleven year old neighbor, placed his penis on her vagina. Heidi also testified she witnessed her father perform oral sex on her best friend, Tiffany Simmons. When the prosecutor asked Heidi why she did not tell appellant to stop his conduct, Heidi explained she was scared of him "[b]ecause he is a big dude." Tr. Vol. II, at 309. Michael Huth, who was eleven years old at the time of trial, testified he and appellant shared the same bed. Michael explained appellant would place his penis on his bare behind when they were in bed together at night. Michael acknowledged he witnessed appellant place his penis on Heather on at least one occasion, and also observed appellant engage in vaginal intercourse with Heidi on numerous occasions. Michael also stated he witnessed appellant engage in oral sex with Tiffany Simmons. The boy did not tell appellant to stop because he was afraid appellant would hit him with a paddle. Dr. Robin Tener, Clinical Director of Northeast Ohio Psychological Associates, testified she received a referral from SCDHS to perform evaluations of the Huth children. Dr. Tener personally performed the evaluations of Heather and Heidi. Dr. Tener described the history of appellant's abuse of Heather as a progression of increasingly intrusive sexual touching which began when Heather was ten and a half or eleven years old. Dr. Tener testified Heather did not view appellant as threatening or forcing her to engage in such activity, but noted Heather was well aware of the consequences of her failure to comply with appellant's demands. Although Heather denied appellant engaged in sexual intercourse with her, she described to the doctor an occasion on which she woke up after she had been drinking alcohol with appellant, her clothes were off, her legs and vaginal areas were sore, and her legs were covered with a sticky substance. Heather also told Dr. Tener she observed appellant molest Heidi and Tiffany. Dr. Tener also testified regarding the history of appellant's sexual abuse of Heidi, which began when she was nine years old, prior to her parents' separation. Like Heather, Heidi described to the doctor a progression of increasingly intrusive sexual abuse by appellant. Heidi detailed instances of appellant's touching her erogenous zones, fellatio, cunnilingus, and vaginal intercourse. Dr. Tener noted Heidi's awareness appellant would withhold privileges if she did not comply with his requests. Heidi also told the doctor she was present when appellant performed oral sex on Tiffany. Tiffany Simmons, who was thirteen years old at the time of trial, testified she spent every day during the summer, and often slept overnight, at the Huth home after she and Heidi became best friends. One evening, appellant entered the bedroom in which Heidi, Heather, and Tiffany were sleeping. He touched Tiffany's legs, and ultimately, digitally penetrated her. On a different occasion, appellant performed oral sex on her. Although she never witnessed appellant engage in sexual conduct with Heather, Heidi, or Michael, Tiffany stated Heidi discussed such instances with her. Steven Simmons, who was twelve years old at the time of trial, also testified. Steven testified he would often visit the Huth home with his sister, Tiffany. Although Steven denied appellant ever touched him, he stated appellant made him engage in simulated sex with Heidi. Appellant instructed Steven and Heidi to remove their clothes, and once the children were naked, he forced Steven to lay on top of Heidi. When Steven and Heidi hesitated, appellant called the children "pussy" and "chicken" until they acquiesced. All of the children, except for Steven, admitted appellant freely and openly allowed them to drink alcohol and smoke marijuana. Appellant provided the children with alcohol obtained from the Puts Holland Inn, the bar at which he was employed. On the morning of the last day of trial, the State moved to amend the indictment pursuant to Crim. R. 7(D) as to the three counts of rape. The State asked the trial court to remove the language relative to the necessity to find force. Attorney Lane objected to the amendment, arguing such amendment would prejudice appellant because the issue of force had already been presented to the jury through the prior day's testimony. The trial court overruled the State's motion, finding the amendment created a substantial change in the indictment which would require a discharge of the jury. Following the close of the State's case, appellant rested without presenting a defense. During closing arguments, Attorney Lane made the following comments:
MS. LANE: It is absolutely true that [appellant] is a sick disgusting individual. That is a fact that is not in question in this case. He is not walking out of this courtroom a free man. Miss Kanellis told you that yesterday.
But that doesn't matter. It doesn't matter what personal emotional feelings you have concerning [appellant] and the relationship he had with his children.
* * *
. . . Monday you took an oath, and frankly you can't say that you weren't warned. In all fairness[,] through all the questioning, to the form filling, through everything[,] you were put on notice of what type of case this was going to be.
You all assured us, not just me and Miss Kanellis and [appellant] but the Court that when you took that oath you could follow it; and that oath included considering each count separately and the evidence applicable to each count separately and proof beyond a reasonable doubt as to each count separately uninfluenced by your verdict on each count and uninfluenced by what you think of any of us.
Tr., Vol. III at 600-602.
After hearing the evidence and deliberations, the jury found appellant guilty of all the charges contained in the indictment. On September 18, 1998, the trial court sentenced appellant to a term of life imprisonment on each of the three rape counts, a term of five years imprisonment on each of the six gross sexual imposition counts, and a term of eighteen months imprisonment on each of the four corrupting another with drug counts. The trial court ordered two of the gross sexual imposition counts to run concurrently, but ordered the remaining sentences of the remaining counts to run consecutively to each other. The jury's verdicts and the trial court's sentences were memorialized in a Judgment Entry dated October 2, 1998. It is from these convictions and sentences appellant prosecutes this appeal, raising as his sole assignment of error:
 DEFENSE COUNSEL FAILED TO RENDER ADEQUATE LEGAL ASSISTANCE IN VIOLATION OF THE RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AS WELL AS DUE PROCESS PROTECTIONS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
Herein, appellant maintains he was denied his constitutional right to effective assistance of counsel. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. ___, 113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell, supra. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra, at 697. Accordingly, we will direct our attention to the second prong of the Strickland test. Appellant references two specific instances, which he contends demonstrate trial counsel's ineffectiveness. First, appellant argues he was denied effective assistance of counsel as a result of the comments made by his defense attorneys during opening statements and closing arguments. Next, appellant asserts he was denied effective assistance of counsel as a result of counsel's failure to argue in support of the State's motion to amend the indictment. We turn to appellant's first claim of ineffectiveness. During opening statements, Attorney Kanellis repeatedly noted "some inappropriate sexual acts" had occurred in the Huth house. During closing arguments, Attorney Lane likewise remarked, "it is absolutely true that [appellant] is a sick disgusting individual." At first blush, and standing alone, these comments seemingly reveal the attorneys' disdain for appellant as well as an admission of his guilt. However, when viewed in the context of the entire opening statement and closing argument, the remarks clearly were part of their trial strategy. Although Attorneys Kanellis and Lane acknowledged the disturbing aspects of the case, they repeatedly reminded the jurors of their duty to listen to all the evidence and to consider whether the State proved each element of each count beyond a reasonable doubt in its determination of appellant's guilt. We conclude defense counsel made the comments, not as an admission of appellant's guilt, but rather to emphasize to the jury the high burden of proof upon the State in criminal cases, and its duty relative to the State's burden. In the instant action, the State presented the testimony of five child witnesses, each of whom testified appellant had sexually molested him/her before he/she was thirteen years of age. Throughout the cross-examination of these witnesses, appellant's trial counsel focused on raising reasonable doubt in the minds of the jury. Upon review of the record, we find the result of the trial was not unreliable and the proceeding was not fundamentally unfair because of trial counsel's remarks. Accordingly, we find appellant has failed to satisfy the second prong of the Strickland test as to this portion of his assignment of error. We now turn to appellant's argument as it relates to trial counsel's failure to support the State's mid-trial motion to amend the indictment. Appellant maintains trial counsel should not have objected to the State's motion because "[t]he force specification in R.C.2907.02(A)(2) . . . required a finding separate from a finding . . . [a]ppellant engaged in sexual conduct with a person who is less than thirteen years of age in R.C. 2907.02(A)(1)(b), and the statute mandates a sentence of life imprisonment for whoever is found to have violated both sections." Brief of Appellant at 11-12. Upon review of the portion of the transcript relative to the State's motion to amend the indictment, we find appellant is mistaken as to the substance of the State's request. The State did not request to remove the force specifications to the rape counts, but rather to remove the force element from each of those counts. R.C. 2907.02(A) sets forth the elements of rape: (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
* * *
(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
R.C. 2907.02(B) provides, in part:
 (B) Whoever violates this section is guilty of rape, a felony of the first degree . . . If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.
In the instant case, the trial court instructed the jury as to the elements of rape pursuant to R.C. 2907.02(A)(1)(b) and (A)(2) as well as the force specification. Assuming, arguendo, the trial court permitted the State to amend the indictment to remove the force element from the rape counts, the force specification would remain and the court would still have instructed the jury on the specification. The jury found appellant guilty of the three rape counts and the three force specifications. Such findings indicates the jury determined appellant purposely compelled his victims to submit by force or threat of force. Because the jury necessarily found appellant used force or the threat of force when it found him guilty of the specifications, we find trial counsel's failure to support the State's motion to amend did not result in the trial being unreliable or the proceeding fundamentally unfair. Accordingly, we find appellant is unable to satisfy the second prong of the Strickland test as to this prong of his assignment of error. Appellant's sole assignment of error is overruled.
The convictions and sentences of the Stark County Court of Common Pleas are affirmed.
By:
Hoffman, P.J. Farmer, J. and Edwards, J. concur