OPINION
Defendant-appellant Robert Kreischer appeals his conviction and sentence from the Perry County Court of Common Pleas on one count of felonious assault in violation of R.C. 2903.11(A)(1). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On June 22, 2000, the Perry County Grand Jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. At his arraignment, appellant entered a plea of not guilty to the charge contained in the indictment. Thereafter, a jury trial commenced on January 22, 2001. The following evidence was adduced at the jury trial.
On May 28, 2000, appellant and Terry Wooten, the victim herein, owned adjacent properties located in Perry County, Ohio, which are accessible via a gravel access road. At trial, Wooten testified that, prior to May 28, 2001, he had problems with appellant with respect to the use of the access road "[f]rom time to time." Trial Transcript at 32.
On May 28, 2000, Wooten and a friend, Brian Batross, were coming down the access road when they discovered that the road was blocked by two pickup trucks and a three wheeler. As Wooten was exiting his vehicle, he honked on his horn. Appellant then approached with another man and told Wooten that he wanted to speak to him. Since appellant, who had a beer in his hand, appeared to be "a little intoxicated," Wooten took his eyeglasses off "just in case I got smacked." Trial Transcript at 35.
Wooten testified that after appellant told him that "I want to kick your ass", he responded by stating "Okay. You've told me this for five years you've wanted to kick my ass. I'm in front of you. Kick my ass." Trial Transcript at 35. As Wooten walked behind his truck, appellant followed him. According to Wooten, appellant, who was behind him, "grabbed me and swung me around, got me in the eye" with his fist. Trial Transcript at 36. When Wooten fell to the ground, appellant kicked him five or six times in the head, neck and back. Wooten's account of what took place was corroborated by Brian Batross.
Immediately after the assault, Wooten and Batross went to the Perry County Sheriff's Department where Wooten gave a statement to Deputy Ed Miller. According to Deputy Miller, appellant had abrasions and marks on his face, including injuries around both of his eyes and his right ear. Deputy Miller further testified that while Wooten's right eye was slightly discolored and "had some swelling to it", his left eye "was extremely swollen, and as time went on, as I was speaking with him and doing my interview with him, . . . his eye began to close from the swelling." Trial Transcript at 92-93. Deputy Miller also noticed that the back of Wooten's hands "were kind of red". Trial Transcript at 105.
Appellant testified at trial in his own behalf. Appellant testified that, after he told Wooten that all of the trucks blocking the access road could not be moved immediately since the owners of one of them were fishing at a nearby pond, Wooten "just freaked out". Trial Transcript at 171. The following is an excerpt from appellant's testimony at trial:
 . . . I started walking back up the hill, and he's yelling at my kid, "Move those F-ing trucks. Get all those F-ing trucks." My son's like, "I can't even drive." He says, "You get somebody down here to move those F-ing trucks," and I go — that's when I just walked up.
 I says, "Wooten, what's your problem?" He says, "You get those F-ing trucks out of the road," and I told little Bob [appellant's son], I said "Get that four-wheeler out of the way." And he says — he says, "This is just as much my road as it is yours," and he started going off on me. I said, "You're either going to go through or sit there for a while," because I knew the people that owned the truck were down fishing at the pond.
 I told little Bob, I said, "Come on, little Bob," and we started walking back down to where they were working, and he just freaked out.
Who's he?
 A. Wooten. I heard the door slam on his truck, and I looked back, and he's ripping off his glasses and throws his glasses inside, rips his hat off, throws it on the ground, and comes running over to me and shoves me down the driveway. And I'm like, "What's your problem?"
 He says, "You think you're tough. You think you're so bad," keeps on poking me, "You think you're bad. Come on, take a swing at me." I said, "I ain't going to take a swing at you. I've got my kid here." He said, "you wanted to fight me all these times," and he's got mental problems, there's no doubt about it, this guy. . . .
Trial Transcript at 171-172. According to appellant, at appellant's urging, the two then proceeded to walk away from Wooten's truck. Appellant testified that as the two approached Wooten's property line, Wooten started pushing him. When Wooten went to push appellant again, appellant "smacked him right in the eye. And he went flying back into the woods — into the bushes". Trial Transcript at 173. Appellant, when asked, denied that he had ever kicked Wooten. Appellant and his friends, Gary Wojcik and James Ponsart, all testified at trial that appellant had only punched Wooten one time and that appellant had never kicked Wooten.
As a result of the assault, Wooten suffered profound hearing loss in his left ear and, according to audiologist Jennifer Brown, a "mild, high-frequency sensory neural hearing loss" in this right ear. Trial Transcript at 108. In addition, Wooten's left facial bone was broken and permanently pushed in and Wooten suffered permanent vision loss.
At the conclusion of the evidence and the end of deliberations, the jury, on January 22, 2001, returned with a verdict finding appellant guilty of felonious assault in violation of R.C. 2903.11(A)(1). Thereafter, as memorialized in a Judgment Entry filed on March 12, 2001, appellant was sentenced to two years in prison and ordered to make restitution to Wooten in the amount of $9,163.16.
It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 APPELLANT WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR II
 APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE DUE PROCESS CLAUSE OF THE 14TH
AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR III
 THE TRIAL COURT ERRED IN ENTERING AN ORDER OF RESTITUTION IN THE AMOUNT OF $9,163.16.
 I
Appellant, in his first assignment of error, contends that he was denied the effective assistance of trial counsel. Appellant specifically argues that his trial counsel was deficient in failing to obtain, pursuant to Crim. R. 16(B)(1)(g)[1], Wooten's May 28, 2000, written statement to the Perry County Sheriff and Deputy Miller's signed, typewritten notes recording Wooten's statements to him for the purposes of impeaching Wooten. According to appellant, since there were conflicting accounts of the assault, the same were necessary to impeach Wooten's credibility "as to whether unreasonable force was utilized by Appellant in exercise of the right to self-defense."[2] Appellee, in its brief, concedes that "defense counsel did not request these documents at trial."[3]
A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364;Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142.
As is stated above, appellant maintains that his trial counsel was ineffective in failing to obtain a signed, written statement given by Wooten to the Perry County Sheriff on May 28, 2000, and the signed, typewritten notes of Deputy Ed Miller recording Wooten's statements for purposes of impeaching Wooten. According to appellant, Wooten, in such statement, indicated that while he was on the ground, appellant "kick[ed] my ribs a few times". While such statement and Deputy Miller's notes were not procured by appellant prior to trial, during the period between the trial and the sentencing hearing appellant's new counsel obtained a copy of the same via a Public Records request. Subsequently, at the sentencing hearing in this matter, appellant moved to supplement the record with Wooten's written statement and Deputy Miller's notes "as a matter of housekeeping". Transcript of Sentencing hearing at 8. After appellee authenticated the same as records of the Perry County Sheriff in relation to the case, the trial court granted appellant's motion to supplement and then sentenced appellant. Appellant now specifically argues that the material inconsistencies between Wooten's oral and written statements and his trial testimony with respect to whether he was repeatedly kicked in the head "would have been fertile ground for cross-examination by Appellant's trial counsel."
However, while appellant contends that his trial counsel was deficient in failing to obtain both Wooten's written statement and Deputy Miller's notes, we find that it is unnecessary to reach such issue. "Since a reviewing court can only reverse the judgment of a trial court if it finds error in the proceedings of such court, it follows that a reviewing court should be limited to what transpired in the trial court as reflected by the record made of the proceedings." State v. Ishmail
(1978), 54 Ohio St.2d 402, 405-406. The record in the case sub judice
indicates that the trial court never reviewed either Wooten's written statement or Deputy Miller's notes. In fact, as is stated above, it was not until the sentencing hearing that appellant's new counsel sought to supplement the record with the same for "purposes of housekeeping." We find, therefore, that Wooten's written statement and Deputy Miller's notes were not properly part of the record in the trial court since they were never considered by the trial court.
Accordingly, because the basis for appellant's claim of ineffective assistance of counsel is not found on the record, the claim is not properly before this Court on direct appeal. State v. Cooperrider (1983),4 Ohio St.3d 226, 228.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, maintains that he was denied the right to a fair trial by appellee's failure to disclose Wooten's signed, written statement to the Sheriff's Department and Deputy Miller's typewritten notes summarizing Wooten's oral statements to him. Appellant, in the case sub judice, had, on September 13, 2000, filed a written supplemental request for discovery pursuant to Crim.R. 16 requesting, in part, "[a]ny and all evidence favorable to the Defendant or applicable to his defense in this case".
In Brady v. Maryland (1963), 373 U.S. 83, 87, it was established that the prosecution's failure to disclose evidence favorable to the accused upon request constitutes a violation of the Fourteenth Amendment's due process guarantee of a fair trial when "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id.; see, also, State v. Johnston (1988),39 Ohio St.3d 48. This opinion was incorporated into Ohio's Crim.R. 16(B)(1)(f), which provides "[u]pon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material to guilt or punishment."
As is discussed above, appellant's claim of non-compliance with Crim.R. 16 is based upon facts dehors the record — namely, Wooten's signed statement and Deputy Miller's notes that were the subject of appellant's motion at the sentencing hearing to supplement the record "for housekeeping purposes". See State v. Gibson (1980), 69 Ohio App.2d 91. Postconviction relief, rather than a direct appeal, is a means by which a defendant may bring claims of constitutional violations based upon matters outside the record. State v. Perry (1967), 10 Ohio St.2d 175, paragraphs four and nine of the syllabus.
Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in his third assignment of error, argues that the trial court erred in ordering him to pay $9,163.16 in restitution to Terry Wooten. We agree. At the sentencing hearing in this matter, Wooten testified that he had suffered $8,000.00 in non-reimbursable lost wages and over $20,000.00 in medical bills. However, no documentation supporting the same was presented to the trial court at the hearing. While the trial court, at the conclusion of the sentencing hearing, ordered appellant to pay restitution in the amount of $16,163.16, in the March 12, 2000, Judgment Entry of Sentence, restitution was ordered in the amount of $9,163.16.[4]
A trial court is authorized to order restitution by an offender to a victim or any survivor of the victim, in amount based upon the victim's economic loss. R.C. 2929.18(A)(1). The trial court is to determine the amount of restitution at the sentencing hearing. Id. The amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty. State v. Gears (1999), 135 Ohio App.3d 297.
Appellee, in its brief, concedes that the "judge did not conduct a full hearing whereat the economic loss was itemized by the victim". Since, therefore, the amount of the restitution was not supported by competent, credible evidence, appellant's third assignment of error is sustained.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Perry County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings regarding the amount of restitution. Costs to be paid as follows: two-thirds by appellant and one-third by appellee.
Hon. Julie Edwards, P.J., Hon. W. Scott Gwin, J., Hon. John Boggins, J., concur.
[1] Crim.R. 16 states, in relevant part, as follows:
(B) Disclosure of evidence by the prosecuting attorney
 (1) Information subject to disclosure. (a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 (g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon . . .
[2] The trial court instructed the jury on the law of self defense.
[3] Appellee, in its brief, argues that appellant had possession of Wooten's statements. However, in reviewing the portion of the trial transcript cited by appellee in its brief, it appears that the bench conference cited by appellee concerned the disclosure of appellant's
statement to defense counsel — not the disclosure of Wooten's statement. In short, there is nothing in the record establishing that appellant was provided with either Wooten's written statement or Deputy Miller's notes.
[4] After appellant was ordered on the record at the sentencing hearing to pay $16,163.16 in restitution, appellant's counsel pointed out to the trial court that the presentence investigation report indicated that $7,000.00 had been covered by insurance.