DECISION.
{¶ 1} Petitioner-appellant Terrence Gholston has taken the instant appeal from the judgment of the Hamilton County Court of Common Pleas denying his petition for postconviction relief. On appeal, he presents two assignments of error, in which he challenges the common pleas court's application of the doctrine of res judicata to bar his postconviction claim and the court's dismissal of his petition without an evidentiary hearing. Upon our determination that Gholston was entitled to an evidentiary hearing on his petition, we reverse the judgment of the court below.
{¶ 2} In March of 2000, a Hamilton County grand jury returned a four-count indictment charging Gholston and three other men with two counts of aggravated robbery and two counts of robbery in connection with the armed robbery of cousins Keith and Ernest Cephas. Counsel was appointed to represent Gholston, and the defense filed, prior to trial, a notice of alibi and a motion to suppress the victims' out-of-court identification of Gholston as a participant in the robberies.[1] The state, in response to the defense's discovery demand, listed the Cephas cousins as witnesses at trial.
{¶ 3} The period preceding the trial was extended by numerous continuances. During that period, defense counsel and the state caused to be issued a number of subpoenas for the Cephas cousins. Neither party succeeded, however, in effecting personal service upon the victims or in securing their appearance. In June of 2000, Gholston's counsel withdrew, and the court appointed new counsel. Thereafter, the state alone sought to subpoena the victims.
{¶ 4} The court originally set the trial for October 10, 2000, but continued the matter at the defense's request, but without further elaboration, to November 27, 2000. Then, citing the "[u]navailability of prosecuting witness[es]," the court continued the matter at the state's request to January 3, 2001. The state sought, again without success, to secure the appearance of the Cephas cousins at trial by leaving a copy of a subpoena for each witness at an address denoted as his "place of residence." On January 5, following a trial without the victims' testimony, the jury returned verdicts finding Gholston guilty as charged.
{¶ 5} The trial court continued the matter for sentencing. In the interim, Gholston retained new counsel, who filed a motion for acquittal and a motion for a new trial. In each motion, counsel argued, in essence, that, in the absence of the victims' testimony, the evidence was insufficient as a matter of law to support Gholston's convictions. Following a hearing, the trial court overruled the motions and sentenced Gholston as appears of record.
{¶ 6} On appeal from his convictions, Gholston advanced a single assignment of error, in which he challenged the balance struck by the jury in weighing the evidence adduced at trial. We overruled the assignment of error and affirmed the judgment of conviction, see Statev. Gholston (Oct. 24, 2001), 1st Dist. No. C-010104, and the Supreme Court of Ohio declined jurisdiction.
{¶ 7} Gholston then filed, pursuant to App.R. 26(B), an application to reopen his direct appeal. In his application, he contended that he had been denied the effective assistance of appellate counsel by, inter alia, appellate counsel's failure to assign as error trial counsel's ineffectiveness in failing to secure the presence at trial of the Cephas cousins. We denied the application and, in so doing, held that a postconviction petition was the appropriate vehicle for Gholston's claim challenging trial counsel's competence in failing to present the victims' testimony, because the claim depended for its resolution upon evidence dehors the record. The supreme court declined to review our decision.
{¶ 8} In his petition for postconviction relief, Gholston contended that he was denied the effective assistance of trial counsel, when counsel failed to secure the exculpatory testimony of the Cephas cousins. The state, in its memorandum in opposition to the petition, offered nothing in the way of evidentiary matter. It merely asserted that the petition was subject to dismissal without an evidentiary hearing because Gholston's claim "lack[ed] credibility," was unsupported by "proper evidentiary documentation," and was barred under the doctrine of res judicata. The common pleas court denied the petition upon its conclusions that the claim was barred under the doctrine of res judicata, and that trial counsel's failure to seek and secure the victims' presence at trial constituted a "reasonable defense strategy."
 I.
{¶ 9} Gholston, in his first assignment of error, challenges the common pleas court's application of the doctrine of res judicata to bar his postconviction claim. This challenge is well taken.
{¶ 10} The Ohio Supreme Court in State v. Cole (1982),2 Ohio St.3d 112, 443 N.E.2d 169, syllabus, held that res judicata is an appropriate basis for the dismissal of a postconviction claim alleging defense counsel's ineffectiveness at trial, when the petitioner was represented by new counsel on appeal and the issue could fairly have been determined without evidence dehors the record. New counsel represented Gholston on appeal. But Gholston offered outside evidence in support of his postconviction challenge to trial counsel's performance, and, as we determined in denying Gholston's application to reopen his appeal, the claim depended for its resolution upon such evidence. We, therefore, hold that the claim was not subject to dismissal under the doctrine of res judicata. See Cole, supra, syllabus. Accordingly, we sustain the first assignment of error.
 II.
{¶ 11} In his second assignment of error, Gholston challenges the common pleas court's dismissal of his petition without an evidentiary hearing. This challenge is also meritorious.
{¶ 12} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. See R.C.2953.21(A)(1). In advancing such a claim, the petitioner bears the initial burden of demonstrating, through the petition and any supporting affidavits and the files and records of the case, "substantive grounds for relief." R.C. 2953.21(C).
{¶ 13} A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See id.; State v. Pankey
(1981), 68 Ohio St.2d 58, 428 N.E.2d 413; State v. Jackson (1980),64 Ohio St.2d 107, 413 N.E.2d 819. Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C. 2953.21(E).
{¶ 14} In his petition, Gholston sought relief on the ground that he had been denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance of defense counsel, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. See Strickland v.Washington (1984), 466 U.S. 668, 694, 104 S.Ct. 2052. To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result."State v. Powell (1993), 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (citingLockhart v. Fretwell [1993], 506 U.S. 364, 113 S.Ct. 838, andStrickland, supra).
{¶ 15} The record of the proceedings at trial demonstrates Gholston's desire, from the outset, that the victims testify at trial. In the moments before the first witness testified at trial, Gholston told the court that he found it "strange" that, while the victims had testified at the trial of his co-indictee Michael Jackson, they could not be located to testify at his trial. The court ascertained that the state had tried, but had failed, to effect personal service upon the victims and declared that it would issue no more subpoenas unless the defense provided the court with different addresses. To this discussion, defense counsel had nothing substantive to contribute.
{¶ 16} The trial proceeded immediately thereafter, and Gholston was convicted upon the testimony of three police officers and his co-indictees Anthony Calvin and Michael Jones. Calvin and Jones, who had entered guilty pleas and had testified for the state in exchange for reduced sentences, identified Gholston as the man who had, in the course of a drug transaction, "scuffl[ed]" with and relieved the Cephas cousins of drugs, money, and personal possessions. The arresting officer identified Gholston as one of "three or four" men whom he had removed from a minivan identified by the Cephas cousins as the vehicle in which their assailants had fled. Gholston, when he was removed from the van, had in his possession none of the property alleged to have been stolen, and the gun recovered from under a seat in the minivan did not bear Gholston's fingerprints. The defense rested without presenting any evidence.
{¶ 17} In support of his postconviction petition, Gholston offered his own affidavit and the affidavits of Ernest and Keith Cephas. Gholston averred in his affidavit that, prior to trial, he had "insisted to [his second appointed] trial counsel that [counsel] procure the attendance at [his] trial of both alleged victims Keith Ernest Cephas," and that "counsel [had] ignored [his] wishes." Ernest Cephas averred in his affidavit that he had not received the subpoena left at his parents' residence, "where two Ernest Cephas[es] reside[d]"; that he had testified at Michael Jackson's July 2000 trial and, despite Gholston's presence in the courtroom, had not identified Gholston as one of his "attackers" on the night of the robbery; and that, had he been subpoenaed to appear at Gholston's trial, he would have testified that he had "initially misidentified Gholston as the gunman" and had not seen Gholston on the night of the robbery. Keith Cephas similarly averred that he had not received a subpoena to appear at Gholston's trial; that he had testified at Jackson's trial, but "could not identify Gholston who was in the [c]ourtroom for the trial"; and that, had he been subpoenaed to appear at Gholston's trial, he would have testified that he had "initially misidentified Gholston as the gunman" and had not seen Gholston on the night of the robbery. Additionally, Keith Cephas asserted that, in July 2000, while he "was in [the] custody of the Hamilton County Sheriff's department[,] * * * he [had] observed the gunman[,] who was being held in an adjacent cell."
{¶ 18} When, as here, outside evidence submitted in support of a postconviction claim consists of affidavits, the common pleas court must accord the affidavits "due deference," but need not "accept the affidavits as true statements of fact." Instead, the court "may, in the sound exercise of discretion, judge their credibility" and "may, under appropriate circumstances * * *, deem affidavit testimony to lack credibility without first observing or examining the affiant." State v.Calhoun (1999), 86 Ohio St.3d 279, 284, 1999-Ohio-102, 714 N.E.2d 905. When assessing the credibility of an affidavit, the court must consider all relevant factors, including "(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavit contain[s] or rel[ies] on hearsay, (4) whether the affiant
[is a] relative of the petitioner, or otherwise interested in the success of the petitioner's efforts, * * * (5) whether the affidavit
contradict[s] evidence proffered by the defense at trial," (6) whether the affidavit is contradicted by the affiant's trial testimony, and (7) whether the affidavit is "internally inconsistent." Id. at 284-285,714 N.E.2d 905.
{¶ 19} The judge who reviewed Gholston's petition had also presided over his trial. This perspective prompted the common pleas court, in the findings of facts and conclusions of law accompanying its dismissal of the petition, to find that the Cephas cousins had been "served with subpoenas for the January 3, 2001 trial date"; that the prevailing belief among all participants in the trial had been that the Cephas cousins would implicate, not exculpate, Gholston in the offenses; and that defense counsel had proceeded throughout the trial upon a "belief [that] the [s]tate could not prove the case with[out] the victims' testimony." The court thus concluded that "[i]t was the reasonable defense strategy of trial counsel to use the failure of the alleged victims to appear at trial to its advantage."
{¶ 20} The fact that the Cephas cousins were served with subpoenas for Gholston's January 2001 trial does not controvert the cousins' statements in their affidavits that they did not receive the subpoenas, when the record shows that the subpoenas were not served personally. The court's finding that the trial's participants all proceeded upon a shared belief that the Cephas cousins would implicate Gholston is contradicted by the record, which shows that, in the moments before the first witness testified, Gholston had expressed a desire that the victims appear to testify. Moreover, the record, to the extent that it shows Gholston's desire that the victims testify, reinforces Gholston's assertion in his affidavit that his counsel had ignored him when he had insisted that counsel secure the victims' presence at trial. Finally, the court's conclusion that defense counsel had pursued a trial strategy that stood to benefit from the victims' failure to testify at trial does not controvert Gholston's assertion that counsel was ineffective in having pursued such a strategy.
{¶ 21} Nor does consideration of the other Calhoun factors undermine the credibility of the supporting affidavits. Although statements contained in the victims' affidavits are, in some respects, phrased identically, each affidavit is internally consistent and conveys firsthand information, and the record discloses no interest that the victims might have in the success of Gholston's effort to obtain a new trial.
{¶ 22} Based upon the foregoing, we conclude that the common pleas court, in discounting the credibility of the affidavits offered in support of Gholston's postconviction claim, abused its discretion. Moreover, the petition, with its supporting affidavits, and the files and the record of the case show a deficiency in defense counsel's performance at trial such that the trial cannot be said to have reliably produced a just result. Thus, Gholston has established an entitlement to a hearing on his claim. See R.C. 2953.21(E).
{¶ 23} We, therefore, hold that the common pleas court erred when it dismissed Gholston's petition without a hearing. Accordingly, we sustain the second assignment of error, reverse the judgment entered below, and remand this matter for further proceedings consistent with the law and this Decision.
Judgment reversed and cause remanded.
Sundermann, P.J., Doan and Painter, JJ.
[1] The defense withdrew the notice of alibi at the close of the state's case. The record reflects no disposition of the motion to suppress.