OPINION
{¶ 1} Defendant-appellant David Moser appeals his conviction and sentence in the Richland County Court of Common Pleas on one count of unlawful sexual conduct with a minor. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 17, 2004, the Richland County Grand Jury indicted appellant on one count of rape and one count of unlawful sexual conduct with a minor.
 {¶ 3} The matter proceeded to jury trial on April 16, 2005. At trial, the evidence established: In May of 2003, appellant lived with Tonya Saylor and her three daughters. Appellant and Tonya Saylor were relatively good friends, and had known each other for years.
 {¶ 4} The State presented evidence appellant and Kelsie Saylor, the 12-year old daughter of Tonya Saylor, engaged in sexual intercourse on approximately fifteen occasions between May and June of 2003. Another daughter, Kassie, witnessed appellant and Kelsie holding hands and passionately kissing in the living room of the home.
 {¶ 5} Tonya Saylor removed appellant from the home.
 {¶ 6} On January 29, 2004, Kelsie failed to attend elementary school. Her cell phone indicated she had called appellant's cell phone to talk to him for several minutes. Kelsie later admitted to having sexual intercourse with appellant on the same day to Deputy Jerry Snay of the Richland County Sheriff's Office.
 {¶ 7} Jodie Flynn, a registered nurse at MedCentral Hospital and trained sexual assault nurse examiner, testified she obtained physical evidence from Kelsie of trauma evident in the cervix consistent with trauma caused by a penis in the course of vaginal intercourse. DNA evidence taken indicated the sperm profile was consistent with that of appellant.
 {¶ 8} Appellant filed a notice of alibi regarding count two, which related to the January 29, 2004 incident. The notice of alibi alleged appellant was in Florida at the time of the incident. At trial, appellant's brother, his brother's fiancé and two close friends testified he had gone to Florida the first week of January, 2004.
 {¶ 9} On April 17, a jury found appellant guilty of unlawful sexual conduct with a minor, and not guilty on the rape charge.
 {¶ 10} On April 20, 2005, the trial court sentenced appellant to five years imprisonment, and classified appellant as a sexually oriented offender.
 {¶ 11} Appellant now appeals, assigning as error:
 {¶ 12} "I. THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO FIVE YEARS IN PRISON FOR A VIOLATION OF OHIO REVISED CODE 2907.04(A)(3), A THIRD DEGREE FELONY, AND SAID SENTENCE WAS IN VIOLATION OF OHIO REVISED CODE SECTION 2929.14(C) AND WAS ERROR IN SENTENCING THE DEFENDANT ABOVE THE ONE YEAR MINIMUM REQUIRED BY OHIO REVISED CODE SECTION 2929.14(B) AND (C).
 {¶ 13} "II. THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO FIVE YEARS IN PRISON FOR A VIOLATION OF OHIO REVISED CODE 2907.04(A)(3), A THIRD DEGREE FELONY, AND SAID SENTENCE VIOLATED THE DEFENDANT'S RIGHT TO A JURY TRIAL ON THE ISSUES FOUND BY THE TRIAL COURT, UNDER BLAKELY V. WASHINGTON, UNITED STATES CONSTITUTION. SIXTH AMENDMENT, AND OHIO REVISED CODE2929.14(B)(2).
 {¶ 14} "III. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION, ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION, AS WELL AS THE DUE PROCESS OF PROTECTION UNDER THEFOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.
 {¶ 15} "IV. THE COURT ERRED AS A MATTER OF LAW, AND THE SAME WAS PLAIN ERROR, IN FAILING TO GIVE A JURY CHARGE ON THE DEFENSE OF ALIBI WHEN THE DEFENDANT PROPERLY GAVE A NOTICE OF ALIBI AND PRESENTED EVIDENCE IN SUPPORT OF HIS ALIBI DEFENSE."
 I, II {¶ 16} Appellant's first and second assignments of error raise common and interrelated issues; therefore, we will address the assignments together.
 {¶ 17} Appellant asserts the trial court erred in imposing a sentence above the one-year minimum prison term required by O.R.C. Section 2929.14(B) and (C). Specifically, appellant asserts the facts in this case do not support the finding appellant committed the worst form of the offense. Appellant notes he had not previously served a prison term; therefore, the statute requires the court impose the shortest prison term authorized for the offense.
 {¶ 18} Appellant was convicted of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A)(3), a felony of the third degree. Section 2929.14 states:
 {¶ 19} "(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 20} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 21} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
 {¶ 22} "(C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 23} The trial court sentenced appellant to the maximum term of five years, and found:
 {¶ 24} "THE COURT: I am required to weigh various factors by the sentencing law in Ohio. In terms of seriousness of the offense, there are several factors which argue the offense is more serious than most.
 {¶ 25} "First of all, the injury was exacerbated by the victim's age. Secondly, I think there is serious psychological harm for a twelve-year-old, thirteen-year-old girl being involved in such a relationship with a twenty-four-year old man.
 {¶ 26} "Thirdly, the offender did hold a position of trust in this particular family. He was admitted to the family, saying he was unable to reside in his own household, and had a position of trust in this particular household at the time.
 {¶ 27} "Fourthly, the offender's relationship with the victim facilitated the offense. He knew her for a number of years, and, to some extent, was viewed as an older brother and even perhaps a parental figure by the girls in the family.
 {¶ 28} "In terms of recidivism, the most troubling factor I've seen is there has been no genuine remorse expressed here. In terms of lack of recidivism, the lack of a felony record would be a factor in his favor. But that is often the case in sex offenses.
 {¶ 29} "That brings me then to the consideration of sentencing. In this particular case, the classification is a third degree felony by virtue of the fact that the offense was committed a couple of months after the child turned thirteen, otherwise it would have been a first degree felony rape. So I would have to say that the minimum sentence, I think, in this case, would not at all be adequate to be sure that we did not demean the seriousness of the offense, and perhaps adequately protect the public who would be concerned about the seriousness of the offense.
 {¶ 30} "I would say that there are several arguments that this is the worst form of the offense, and I very seldom find the offense to be the worst form. In this particular case, where it's the lowest level of the age range, just thirteen, we have a man who begged his way into this household, saying he couldn't live in his own household, this girl and her sisters and mother could trust him, that he would be able to come into that household, they could help him out. He was permitted to come in because he was known to the family for a long time. He had a history of being in a proper relationship with these young girls. He singled out the youngest of the children of all, and most vulnerable child for this victimization. The victimization was repeated, according to her story, over and over again.
 {¶ 31} "Third, in addition to starting the lowest level of the age range and getting himself in a position of trust, which he clearly seriously abused, he put the victim and her family through the trial, offering testimony which the jury and I thought was perjured from his brother. And then finally we have the fact that on the way back from Florida, when he was extradited, he escaped, which is again some acknowledgment of guilt.
 {¶ 32} "And, in addition, in this particular case, because of where it took place and the way the community viewed it, it was a source of great trauma to that community as well.
 {¶ 33} "Given all those factors, and particularly the factor about the age of the victim, and the position of trust in which the defendant was, I find that he has committed the most serious form of the offense, and I am sentencing him to five years in prison."
 {¶ 34} Tr. at p. 277-280.
 {¶ 35} Upon review of the trial court's findings and the record, the imposition of the maximum prison term was supported by the evidence, and the trial court properly stated its findings on the record as required by R.C. 2929.14. Accordingly, we find the trial court did not err in sentencing appellant to the maximum term of five years in prison.
 {¶ 36} Appellant's first assignment of error is overruled.
 {¶ 37} Appellant further maintains his sentence violates the United States Supreme Court holding in Blakely v. Washington.
 {¶ 38} This court has previously held a jury is not required to find the factors set forth in R.C. 2929.13(B)(2) or R.C.2929.14(B) before a judge may impose a prison sentence for the conviction of a third, fourth or fifth degree felony. State v.Iddings (Nov. 8, 2004), Delaware App. No. 2004-CAA-06043, Statev. Hughett (Nov. 18, 2004), Delaware App. No. 2004-CAA-06051,2004-Ohio-6207; State v. O'Conner (Dec. 3, 2004), Delaware App. No. 2004-CAA-028, 2004-Ohio-6752.
 {¶ 39} Accordingly, appellant's Second Assignment of Error is overruled.
 III {¶ 40} In the third assignment of error, appellant argues he was deprived of the effective assistance of counsel as a result of his trial counsel's failure to object to hearsay testimony utilized to buttress the credibility of the witness and failing to object to the trial court's not instructing the jury as to appellant's alibi. We disagree.
 {¶ 41} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,
supra at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 42} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter
(1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (citing Lockhartv. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra. at 143,538 N.E.2d 373 (quoting Strickland, supra. at 697).
 {¶ 43} Specifically, appellant claims his trial counsel was ineffective for failing to object to questions asked of Tonya Saylor, the victim's mother, regarding statements made by the victim and a witness, her other daughter.
 {¶ 44} At trial, Tonya Saylor testified:
 {¶ 45} "* * * So, anyways, I just went on in the house, and David and Kelsie was basically right there to meet me in the kitchen, the back door, you know, you walk in through the kitchen there, and they were right there. And it just seemed rather odd to me that they were both right there. And they started to say something to me, and I told them I didn't want to talk to them right now, I wanted to know where Kassie was. And Kelsie told me that she was in the bedroom, which would have been Krystal's room.
 {¶ 46} "I went in there to find her laying there, crying, so upset, not knowing what to think of what she just saw. And so I kind of sat on the bed with her, and I asked her to please look at me and talk to me and tell me what is exactly going on here. And she — Kassie, I mean, she loved David to death, you know. This just practically destroyed that kid. So I finally got her to where she would turn around and talk with me, and she said, mom, they are going to lie to you. She said, they did, they were kissing, I seen them, they were kissing like lovers, I seen them, mom. I said okay. All right. And then I said you stay in here, and I'm going to go out there and talk with these guys.
 {¶ 47} "* * *
 {¶ 48} "A. I asked her, I said Kelsie, you're going to have to start talking to me here. I said, because there is only one way I am going to be able to know if anything ever happened, and I am going to end up taking you to the emergency room if you don't start talking to me. And so finally she broke down and, I mean, it was hard, but she told me, she said I had sex with David, mom. And, of course, you know, I had to stay strong for her because it tore her apart to even tell me that. She was just sitting there crying and laying her head down on my arm, I had to stay strong and tell her, you know, it's all right, Kelsie, we will deal with this the best way we can.
 {¶ 49} "* * *
 {¶ 50} "Q. Did Kelsie ever say anything about being concerned with what might happen to the defendant?
 {¶ 51} "A. Yes, sir. She was basically scared to death that he was going to go to jail."
 {¶ 52} Tr. at 96-105.
 {¶ 53} With regard to Ms. Saylor's testimony relative to the statements of Kassie, we find the same falls within the excited utterance exception to the hearsay rule under Evidence Rule 803(2), which states:
 {¶ 54} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 55} * * *
"(2) Excited utterance {¶ 56} "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 57} In State v. Duncan (1978), 53 Ohio St.2d 215, the Ohio Supreme Court held where a six-year-old victim, still under the domination and nervous excitement of an abusive sex act, related the particulars of the act to her mother at the earliest opportunity, the mother's repetition of such utterances at trial was testimony as to a spontaneous exclamation, and was admissible in evidence as part of the res gestae exception to the hearsay rule.
 {¶ 58} The Court in Duncan set forth a four-part test to determine whether a statement qualifies as an excited utterance under Rule 803(2). The Court held testimony as to statements or declarations may be admissible under the excited utterance hearsay exception, where the court reasonably finds: (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. Id.
 {¶ 59} Upon review, Tonya Saylor's testimony as to Kassie's statements — after witnessing her younger sister and appellant kissing — was properly admissible as an excited utterance exception to the hearsay rule. Accordingly, we find appellant's counsel did not fall below an objective standard of reasonable representation by failing to object to this testimony.
 {¶ 60} Appellant further maintains his counsel was ineffective for failing to object to Tonya Saylor's testimony relative to the statements made by the victim, Kelsie. We do not find Kelsie's statements qualify as an excited utterance. However, upon review of the record, Kelsie testified as to her sexual activity with appellant and admitted to Deputy Snay she had engaged in sexual intercourse with appellant on January 29, 2004, and DNA evidence supported sexual conduct between the two; therefore, Saylor's testimony regarding Kelsie's statement is cumulative and not prejudicial to appellant. We note appellant's counsel did cross-examine Tonya Saylor, the victim and the witness as to the statements.
 {¶ 61} Accordingly, we do not find appellant was prejudiced by his counsel's failure to object to the alleged hearsay testimony. Appellant has not established a reasonable probability the results of his trial would have been different but for the alleged errors.
 {¶ 62} Appellant also argues his counsel was ineffective for failing to object to the jury charge which did not instruct the jury as to appellant's alibi and consideration thereof.
 {¶ 63} Upon review of the record, appellant presented numerous witnesses testifying appellant was in Florida during the first week of January, 2004. Appellant asserts the evidence provides an alibi as to the second charge relative to the January 29, 2004 incident. However, the alibi evidence does not pertain to the date of the alleged incident. Appellant did not offer evidence establishing his presence in Florida on the specific date in question. Accordingly, the trial court was not required to instruct the jury as to appellant's proffered alibi evidence, and appellant's counsel did not fall below an objective standard of reasonable representation by failing to object to the failure to give an alibi instruction.
 {¶ 64} Appellant's third assignment of error is overruled.
 IV {¶ 65} In his fourth assignment of error, appellant maintains the trial court committed plain error in not instructing the jury as to his alibi. For the reasons stated in our disposition of appellant's third assignment of error, we disagree.
 {¶ 66} Appellant's fourth assignment of error is overruled.
 {¶ 67} Appellant's conviction and sentence in the Richland County Court of Common Pleas on one count of unlawful sexual conduct with a minor are affirmed.
Farmer, J. Edwards, J., concurs.
Hoffman, P.J., concurs in part and dissents in part.