OPINION
{¶ 1} Appellant Daniel Ivery ("appellant") appeals his conviction and sentence rendered in the Stark County Court of Common Pleas.
 {¶ 2} The events giving rise to this appeal commenced on the afternoon of August 1, 2005. On this date, Walter Murray was mowing grass at St. Peter's Cemetery located on Cleveland Avenue North, in the City of Canton. While working, Mr. Murray noticed two black men walking around the area of the cemetery. He observed the men walk into the cemetery and then quickly exit. Mr. Murray observed the height of the men and that both were wearing dark clothing. Shortly thereafter, Mr. Murray saw his Dodge Caravan minivan being driven away from the cemetery. Mr. Murray called 911 to report his van stolen and provided the authorities with a description of the suspects and the vehicle.
 {¶ 3} Canton Police Officer Greg Gilmore was off duty that afternoon and was working his first day on a security job for National City Bank on Cleveland Avenue, North, at 34th
Street. Officer Gilmore heard the stolen van report on his radio and realized the cemetery was only fifteen blocks from the bank. While looking out the office window, Officer Gilmore saw a van fitting the description of the stolen van pull into the bank's parking lot. Officer Gilmore also observed the driver of the van wearing a mask.
 {¶ 4} Fearing that the two occupants of the van were going to rob the bank, Officer Gilmore immediately ran out the back door of the bank to confront the men before they entered the bank. As Officer Gilmore exited the door of the bank, he saw two masked men running toward him. Officer Gilmore drew his weapon and yelled, "police, police!" and attempted to run for cover behind a parked truck. As he moved toward the truck, Officer Gilmore fell to the ground. When he got up from the ground, Officer Gilmore saw that the two men had run to the corner of the building. Officer Gilmore walked on the sidewalk leading to the corner and ran into the appellant.
 {¶ 5} Officer Gilmore repeatedly yelled at the two men to show their hands. Instead, appellant pointed a gun at Officer Gilmore and Officer Gilmore responded by firing his gun at appellant. Appellant fell to the ground. Officer Gilmore noticed that appellant's gun was about ten feet away from him and thus, was no longer a threat. Officer Gilmore waited for back-up to arrive. Appellant was treated and transported to the hospital. Detectives arrived and processed the crime scene. The detectives recovered five spent shell casings and appellant's fully loaded semi-automatic handgun.
 {¶ 6} Approximately ten to fifteen minutes later, a Canton police officer arrived at the cemetery to take Mr. Murray to National City Bank for the purpose of making a possible identification of his van. Mr. Murray immediately recognized his van and saw the broken steering column and a screwdriver that did not belong to him.
 {¶ 7} In August 2005, the Stark County Grand Jury indicted appellant for one count of aggravated robbery, with a firearm specification, and one count of grand theft of a motor vehicle. Appellant entered a plea of not guilty to these charges. This matter proceeded to a jury trial on October 11, 2005. Following deliberations, the jury found appellant guilty as charged in the indictment. The trial court sentenced appellant to an aggregate prison term of fourteen and one-half years. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 8} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 9} "II. THE DEFENDANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH ANDFOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.
 {¶ 10} "III. THE TRIAL COURT ERRED IN IMPOSING PAROLE TIME CONSECUTIVE TO THE STATUTORY MAXIMUM WHEN SAID PENALTY IS NOT SUPPORTED BY LAW.
 {¶ 11} "IV. THE TRIAL COURT ERRED IN EXCLUDING RELEVANT AND ADMISSIBLE EVIDENCE OFFERED FOR THE PURPOSE OF IMPEACHMENT."
 I {¶ 12} In his First Assignment of Error, appellant maintains the trial court's finding of guilt is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 13} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St. 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based upon this standard that we review appellant's First Assignment of Error.
 {¶ 14} Appellant sets forth three arguments in support of this assignment of error. First, appellant maintains Officer Gilmore's claim that he brandished a gun is not credible in light of the testimony of other witnesses and in light of his motive and character for being untruthful. At trial, Officer Gilmore testified that he shot appellant because appellant drew a gun. Vol. I at 181. Officer Gilmore further testified that he was trained and re-certified, in June 2005, to aim for "center mass" when shooting a suspect. Id. at 190. Officer Gilmore explained that "center mass" is the chest, abdomen area. Id. at 191.
 {¶ 15} Appellant concludes that because Officer Gilmore did not shoot him in "center mass," this is evidence that he never drew his gun. Appellant further concludes that had appellant drawn his gun, Officer Gilmore would have killed him. In support of this argument, appellant refers to the testimony of two witnesses, Edward Chumney and Richard Brannon, neither of whom observed appellant draw his gun. Id. at 202, 207. Appellant also claims Officer Gilmore had motivation to claim that appellant drew his weapon to ensure that internal affairs had the best possible fact scenario submitted for their review.
 {¶ 16} Based upon our review of the record in this matter, we find the evidence supports Officer Gilmore's version of the events. First, an offender need not brandish a firearm in order to be convicted and sentenced on a firearm specification. Rather, R.C. 2929.14(D)(1)(a)(ii) provides, in pertinent part, that a three-year prison term shall be imposed "* * * if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense; * * *"
 {¶ 17} The evidence clearly establishes that appellant had the gun, in his hand, when Officer Gilmore shot him. Officer Gilmore shot appellant's hand that was holding the gun, shattering the grip of the gun into a dozen pieces. Further, one of appellant's fingers, on the hand holding the gun, was nearly shot off when he was struck by a bullet. Based upon this evidence, the logical inference is that appellant was holding the gun when he was shot by Officer Gilmore. Further, the fact that Officer Gilmore did not hit appellant's "center mass" does not establish that appellant did not draw his gun. Rather, it must be remembered that Officer Gilmore was firing at a moving target.
 {¶ 18} As to the testimony of the eyewitnesses, Edward Chumney followed Officer Gilmore out of the bank and immediately realized that an armed robbery was taking place. Tr. Vol. I at 196-197. Mr. Chumney observed that appellant had taken a position around the corner of the building and was not obeying Officer Gilmore's repeated commands. Id. at 197, 200. Mr. Chumney tried to run for cover and fell in the process. Id. at 197. Although Mr. Chumney did not see whether appellant was armed, given his desire to seek cover, Mr. Chumney's testimony does not support appellant's contention that he never drew his gun.
 {¶ 19} Richard Brannon testified that he could not see whether appellant had a gun because of appellant's position. However, he assumed appellant had a gun because of Officer Gilmore's commands to drop the gun. Id. at 207.
 {¶ 20} Appellant next argues, in support of his First Assignment of Error, the state failed to prove, beyond a reasonable doubt, that he attempted a theft offense at National City Bank. Specifically, appellant contends he never entered the bank or made a demand for money. Appellant concludes that merely entering the parking lot of a bank, while possessing a gun, was not sufficient to prove that he was attempting to rob the bank.
 {¶ 21} The record contains evidence that two men wearing masks drove into the bank's parking lot in a stolen van. The men jumped out of the van and left it running. When confronted by Officer Gilmore, the men hid behind the corner of the building. Appellant drew a gun and pointed it at Officer Gilmore, prompting the officer to fire in self-defense. Upon approaching appellant, Officer Gilmore noticed that appellant was wearing latex gloves. We find this evidence sufficient for the jury to conclude that appellant was not at the bank for a lawful purpose.
 {¶ 22} Finally, appellant challenges the fact that Walter Murray could not identify him as the perpetrator. Despite Mr. Murray's inability to identify the two men who stole his van, we conclude sufficient circumstantial evidence exists to find appellant guilty of the offense. Mr. Murray did notice the height of the two men and the fact that they were both wearing dark clothing. Id. at 153-154, 163. Mr. Murray was working about one hundred yards away from the men and could not see their faces. Id. at 165. The short lapse of time between the theft of Mr. Murray's van and subsequent events at the bank, where the van was located, provides sufficient circumstantial evidence to establish that appellant and his partner were the two men that stole Mr. Murray's van and shortly thereafter used it to attempt to rob the bank.
 {¶ 23} Accordingly, the evidence, circumstantial and direct, supports the appellant's conviction and the jury did not lose its way and create a manifest miscarriage of justice.
 {¶ 24} Appellant's First Assignment of Error is overruled.
 II {¶ 25} In his Second Assignment of Error, appellant maintains defense counsel was ineffective for failing to correctly advise him of the maximum penalty in this case and by failing to adequately preserve the record. We disagree.
 {¶ 26} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 27} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 28} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter
(1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell
(1993), 506 U.S. 364, 370.
 {¶ 29} The United States Supreme Court and the Ohio Supreme court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 30} Appellant first contends that he would have entered a guilty plea had defense counsel correctly advised him of the possible maximum prison sentence. Appellant references a comment defense counsel made, at the conclusion of the sentencing hearing, wherein counsel stated:
 {¶ 31} "Yes, Your Honor. For the record, I would advise the Court that I did not tell [Ivery], when we were discussing whether he would take this case to trial, that he could receive prison time for being on parole through the court. And I say that for the purposes of the record." Tr. Vol. III at 22.
 {¶ 32} At the sentencing hearing, appellant did not complain about not being informed of the possible maximum prison term and whether that influenced his decision to stand trial. Further, the record is silent regarding whether any plea negotiations were discussed between defense counsel and the state. Thus, appellant's contention that he would have pled guilty if he had known what the maximum sentence would have been begs the question of whether the trial court would have imposed a lesser sentence upon a guilty plea. Because the record does not contain this information, we find appellant has not established that he was prejudiced by defense counsel's failure to inform him of the possible maximum sentence.
 {¶ 33} Appellant next argues that defense counsel failed to adequately preserve the record of Officer Gilmore's personnel record. Defense counsel brought to the trial court's attention the issue of Officer Gilmore's personnel file and disciplinary matter. The trial court made the following in limine ruling prior to the commencement of trial:
 {¶ 34} "One of the issues discussed last week related to the conduct of Officer Greg Gilmore and testimony that the defendant wished to elicit relative to a charge that he may have been untruthful.
 {¶ 35} "The Court has reviewed the documents relating to the charge and also reviewed the decision of the arbitrator that, basically, reversed the punishment and the Court finds that the information is not relevant in this particular case.
 {¶ 36} "Evidence Rule 608(B) requires truth — or instances of specific conduct regarding the truthfulness or untruthfulness of a witness, ah, to be admitted at the discretion of the Court only if clearly probative of the truthfulness or untruthfulness of the witness.
 {¶ 37} "And the Court finds that given the circumstances relating to this particular incident involving officer, ah, that it is not clearly probative of the truth or untruthfulness and, further, that, ah, such information is not relevant in this particular case or appropriate in this particular case." Tr. Vol. I at 7-8.
 {¶ 38} We addressed a similar ineffective assistance of counsel argument in State v. Collins, Tuscarawas App. No. 2002AP090069, 2003-Ohio-4854. In Collins, defendant argued trial counsel was ineffective for failing to raise the issue of the victim's history of self-inflicted injury and suicide attempts. Id. at ¶ 66. In rejecting defendant's argument, we stated:
 {¶ 39} "We find no record demonstration which supports these claims. Assuming, arguendo, trial counsel was ineffective for failing to proffer certain evidence and failing to elicit testimony, we find * * * [defendant] cannot establish he was prejudiced thereby."
 {¶ 40} Similarly, in the case sub judice, even if we assumed defense counsel was ineffective for failing to proffer evidence concerning Officer Gilmore's personnel record, we find appellant cannot establish that he was prejudiced. Further, the prior disciplinary action against Officer Gilmore was reversed by an arbitrator and therefore, the probative value of this information is limited.
 {¶ 41} Accordingly, because appellant cannot establish that he was prejudiced by defense counsel's representation, appellant has not met his burden under Strickland.
 {¶ 42} Appellant's Second Assignment of Error is overruled.
 III {¶ 43} Appellant maintains, in his Third Assignment of Error, the trial court erred when it imposed parole time consecutive to the statutory maximum when said penalty is not supported by law. We disagree.
 {¶ 44} Appellant argues R.C. 2929.141 is unconstitutional on the basis that it violates the separation of powers doctrine, his right to due process and is void for vagueness. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120, syllabus. Because appellant did not raise the issue of the constitutionality of R.C. 2929.141 at the trial court level, we find appellant waived this issue for purposes of appeal.
 {¶ 45} Appellant's Third Assignment of Error is overruled.
 IV {¶ 46} In his Fourth Assignment of Error, appellant contends the trial court erred when it excluded relevant and admissible evidence offered for the purpose of impeachment. We disagree.
 {¶ 47} Appellant sought to introduce evidence that Officer Gilmore was terminated from his position as a Canton City police officer. A hearing officer determined that Officer Gilmore lied in an investigation into one of his fellow officers. The hearing officer specifically found that Officer Gilmore was discredited by a videotape recording. Subsequently, an arbitrator reinstated Officer Gilmore concluding the videotape was not sufficiently probative and that the penalty did not consider Officer Gilmore's past employment record.
 {¶ 48} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not reverse a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 49} As discussed in the Second Assignment of Error, defense counsel did not make Officer Gilmore's disciplinary documents a part of the record. Further, appellant did not properly preserve this issue in order to challenge the trial court's ruling on the motion in limine. In State v. Grubb,
(1986), 28 Ohio St.3d 199, the Ohio Supreme Court explained as follows:
 {¶ 50} "1. The effect of the granting of a motion in limine in favor of the state in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion.
 {¶ 51} "2. At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal. * * *" Id. at paragraphs one and two of the syllabus.
 {¶ 52} Appellant did not proffer, at trial, the evidence regarding Officer Gilmore's disciplinary record. Thus, appellant did not preserve this issue for appeal. Although appellant attached these disciplinary records to his brief, because they were not proffered at trial we may not consider them. As such, we conclude the trial court did not abuse its discretion when it granted the state's motion in limine and prohibited appellant from introducing evidence regarding Officer Gilmore's disciplinary record.
 {¶ 53} Appellant's Fourth Assignment of Error is overruled.
 {¶ 54} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, P.J. Gwin, J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to Appellant.